# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

QUARTZ AUTO TECHNOLOGIES LLC,

Plaintiff,

v.

UBER TECHNOLOGIES, INC.,

Defendant.

Case No. 6:20-cv-00126-ADA

## DEFENDANT'S MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION                                                              1

II.   FACTUAL BACKGROUND                                                        2

III.  LEGAL STANDARDS                                                           4

IV.   ARGUMENT                                                                  6

   A.  Quartz Fails to Properly Plead Direct Infringement.                6

     1.  Quartz's Direct Infringement Claims Implicate, but Fail to Adequately Plead, Joint Infringement.                                                               6

      i.   Quartz Relies on Multiple Actors to Plead Direct Infringement.    6

      ii.  Every Method Claim Fails to Plead Direction and Control or Joint Enterprise.   8

      iii. Quartz Treats the System and Computer Program Claims Like the Method Claims Thereby Obligating Itself to Plead Joint Infringement.                      9

      iv.  Quartz Fails to Plead That Uber Controls "the Uber App" as a Whole and Obtains Benefit from Each and Every Claim Element.                              10

     2.  Screenshots Fail to Fill in the Gaps in Quartz's Deficient Pleadings.   11

   B.  Quartz Fails to Properly Plead Claims of Induced Infringement.      15

     1.  Quartz's Indirect Infringement Claims Fail Without Direct Infringement.   15

     2.  The Complaint Fails to Allege Pre-Suit Knowledge of the Asserted Patents.   16

     3.  Quartz's Allegations of Induced Infringement Are Insufficient.       17

   C.  Venue Is Improper Because Quartz Fails to Point to an Act of Infringement Within This District for Each Asserted Patent.                                         18

   D.  Quartz's Boilerplate Request for Injunctive Relief Should Be Dismissed.   20

V.    CONCLUSION                                                               20

# TABLE OF AUTHORITIES

**Page**

## Cases

*Aguirre v. Powerchute Sports, LLC,*
2011 WL 2471299 (W.D. Tex. June 17, 2011) .......................................................16

*Akamai Techs., Inc. v. Limelight Networks, Inc.,*
797 F.3d 1020 (Fed. Cir. 2015)...................................................................4, 5

*Artrip v. Ball Corp.,*
735 Fed. Appx. 708 (Fed. Cir. 2018)..........................................................4, 13, 15

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009).................................................................................4

*Avocet Sports Tech., Inc. v. Garmin Intern., Inc.,*
2012 WL 2343163 (N.D. Cal. June 5, 2012).......................................................17

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)...............................................................................4, 20

*In re Bill of Lading Transmission and Processing Sys. Patent Litigation,*
681 F.3d 1323 (2012).................................................................................6

*Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.,*
631 F.3d 1279 (Fed. Cir. 2011)....................................................................11

*Chalumeau Power Sys. LLC v. Alcatel-Lucent,*
2012 WL 6968938 (D. Del. Sept. 24, 2014)........................................................4

*Chan Soo Kim v. Green Tea Ideas, Inc.,*
2018 WL 1172998 (E.D. Va. Mar. 6, 2018) .......................................................12

*Commil USA, LLC v. Cisco Sys., Inc.,*
135 S. Ct. 1920 (2015)..............................................................................5

*Datascope Corp. v. SMEC, Inc.,*
561 F. Supp. 787 (D.N.J. 1983) ...................................................................19

*DSU Med. Corp. v. JMS Co., Ltd.,*
471 F.3d 1293 (Fed. Cir. 2006)................................................................15, 17

*Digital Equip. Corp. v. Elec. Memories & Magnetics Corp.,*
452 F. Supp. 1262 (D. Mass. 1978) .............................................................19, 20

# TABLE OF AUTHORITIES

**Page**

*eBay Inc. v. MercExchange, L.L.C.*,
   547 U.S. 388 (2006) ....................................................................................................20

*Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*,
   909 F.3d 398 (Fed. Cir. 2018) ......................................................................................5

*Fluidigm Corp. v. IONpath, Inc.*,
   2020 WL 408988 (N.D. Cal. Jan. 24, 2020) .........................................................17, 18

*Gabriel De La Vega v. Microsoft Corp.*,
   No. W-19-cv-612, Dkt. No. 29, slip op. (W.D. Tex. Feb. 7, 2020) .......................8, 11, 12, 15

*Global-Tech Appliances, Inc. v. SEB S.A.*,
   563 U.S. 754 (2011) ......................................................................................................5

*Grecia v. McDonald's Corp.*,
   724 Fed. Appx. 942 (Fed. Cir. 2018) ..........................................................................11

*Hypermedia Navigation LLC v. Google LLC*,
   2019 WL 1455336 (N.D. Cal. Apr. 2, 2019) ...............................................................18

*Int'l. Bus. Machines Corp. v. Bookings Holdings Inc.*,
   775 Fed. Appx. 674 (Fed. Cir. 2019) ............................................................................5

*Intellectual Ventures I LLC v. Motorola Mobility LLC*,
   870 F.3d 1320 (Fed. Cir. 2017) ..............................................................................11, 15

*Lifetime Indus., Inc., v. Trim-Lok, Inc.*,
   869 F.3d 1372 (Fed. Cir. 2017) .....................................................................................6

*Lyda v. CBS Corp.*,
   838 F.3d 1331 (Fed. Cir. 2016) ..............................................................................7, 8, 9

*M & C Innovations, LLC v. Igloo Prods. Corp.*,
   2018 WL 4620713 (S.D. Tex. July 31, 2018) .............................................................20

*Mallinckrodt, Inc. v. E-Z-Em Inc.*,
   670 F. Supp. 2d 349 (D. Del. 2009) ............................................................................16

*Minn. Mining & Mfg. Cor. v. Chemque, Inc.*,
   303 F.3d 1294 (Fed. Cir. 2002) .....................................................................................5

*N. Star Innovations, Inc. v. Micron Tech., Inc.*,
   2017 WL 5501489 (D. Del. Nov. 16, 2017) ...............................................................11

TABLE OF AUTHORITIES

**Page**

*NTP, Inc. v. Research in Motion, Ltd.*,
   418 F.3d 1282 (Fed. Cir. 2005)..................................................................................11

*Parity Networks, LLC v. Cisco Sys., Inc.*,
   2019 WL 3940952 (W.D. Tex. July 26, 2019) ..................................................5, 17

*Parus Holdings Inc. v. Apple Inc.*,
   6:19-cv-432 (W.D. Tex. Feb. 20, 2020) ....................................................................16

*Parus Holdings Inc. v. Google LLC*,
   6:19-cv-433 (W.D. Tex. Feb. 20, 2020) ....................................................................16

*Parus Holdings Inc. v. LG Elecs. Inc.*,
   6:19-cv-437 (W.D. Tex. Feb. 20, 2020) ....................................................................16

*Parus Holdings Inc. v. Samsung Elecs. Co., Ltd.*,
   6:19-cv-438 (W.D. Tex. Feb. 20, 2020) ....................................................................16

*Promos Techs., Inc. v. Samsung Elecs. Co.*,
   2018 WL 5630585 (D. Del. Oct. 31, 2018) ..............................................................12

*Proxyconn Inc. v. Microsoft Corp.*,
   2012 WL 1835680 (C.D. Cal. May 16, 2012) ..........................................................16

*Sudenga Indus., Inc. v. Global Indus., Inc.*,
   2018 WL 9811114 (N.D. Iowa Sept. 14, 2018)........................................................19

*Superior Indus., LLC v. Thor Glob. Enterprises Ltd.*,
   700 F.3d 1287 (Fed. Cir. 2012)..................................................................................5

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
   137 S. Ct. 1514 (2017)..............................................................................................18

*Westech Aerosol Corp. v. 3M Co.*,
   927 F.3d 1378 (Fed. Cir. 2019)................................................................................18

*Xpoint Techs., Inc. v. Microsoft Corp.*,
   730 F. Supp. 2d 349 (D. Del. 2010)..........................................................................16

*In re ZTE (USA) Inc.*,
   890 F.3d 1008 (Fed. Cir. 2018)................................................................................19

**Statutes**

28 U.S.C. § 1400(b) ............................................................................................18, 19

## I.      INTRODUCTION

On December 30, 2019, IBM had a patent yard sale that included over 500 patents.  Weeks later, Plaintiff Quartz Auto Technologies LLC ("Quartz") filed this lawsuit against Defendant Uber Technologies, Inc. ("Uber"), asserting six patents from among the 500-plus taken off of IBM's front lawn.  In its rush to file, Quartz did not do its homework, and the complaint reflects that lack of effort.  Despite its length, Quartz's complaint does not plausibly allege infringement and does not even plausibly allege venue.  The defects are not superficial; they are fatal and demand dismissal of Quartz's complaint.

The problems with Quartz's complaint start with the very basic question: *who* infringes?  Direct infringement requires that all elements of the claim are performed by or attributable to a single actor.  Quartz overlooks this fundamental requirement.  Rather than identify a single actor, Quartz relies on no less than three different actors—a passenger who might use Uber's service, a driver who might transport passengers, and Uber based on its servers.  But Quartz fails to allege, much less identify any facts suggesting, that Uber directs and controls passengers and drivers or that the three together form a joint enterprise.

Quartz's complaint also fails to provide notice of the next, basic question: *what* infringes?  Quartz attempts to sidestep this basic requirement by pasting nearly 200 screenshots into its complaint.  While Quartz inserts screenshots after repeating claim language, Quartz provides no explanation that connects those ambiguous and often conflicting screenshots to the claim language, which makes identifying what Quartz alleges infringes anyone's guess.

Quartz's allegations go beyond direct infringement; Quartz also alleges that Uber induces infringement.  Putting aside its failure to plausibly allege direct infringement, a critical element of inducement, Quartz also fails to allege facts that show Uber knew of the patents before it received the complaint, a further element of inducement.  Given this shortcoming, it is not surprising that

Quartz also ignores its burden to plead facts that show Uber specifically intended others to infringe and knew that the other party's acts constituted infringement, further elements of inducement.

Finally, and just as basic as the "who" and "what" questions, Quartz fails to plausibly plead *where* the infringement occurs.  Indeed, with respect to venue, as well as its demand for an injunction, Quartz does nothing more than recite the elements of those claims.  But Quartz needs to do more.  By failing to identify *who* infringes and *what* infringes, Quartz also fails to plausibly allege *where* the infringement occurs, much less plausibly allege that it occurs in this District as the patent venue statute requires.

A long complaint does not equate to a good complaint, as Quartz's rushed and lengthy complaint confirms.  Respectfully, therefore, and pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court should dismiss Quartz's complaint in its entirety.

## II.  FACTUAL BACKGROUND

On February 18, 2020, Quartz filed a patent infringement lawsuit against Uber.  In the complaint, Quartz alleges Uber infringes six patents[1] through its "ride-hailing system and method."  Though the complaint spans 104 pages, Quartz populates those pages with 197 screenshots with no explanatory text, where the screenshots often take up an entire page.  *See, e.g.*, Compl. ¶¶ 47, 49, 50.  Quartz, moreover, frequently reuses the same screenshots across patents and claims, ignoring the differences in the patents and claims, all the while providing insufficient explanations of how those screenshots allegedly pertain to the claim language.[2]

---

[1]  The six asserted patents are U.S. Patent Nos. 6,446,004 (the "'004 Patent"); 6,807,464 (the "'464 Patent"); 7,370,085 (the "'085 Patent"); 7,958,215 (the "'215 Patent"); 9,460,616 (the "'616 Patent"); and 9,691,275 (the "'275 Patent") (collectively, the "Asserted Patent(s)").

[2]  For the Court's convenience, attached as Exhibit 1 is a chart of the claim language, Quartz's infringement allegations, and the support of alleged infringement for each of the Asserted Patents.

Quartz premises its infringement allegations on a distributed system of its own creation—the "Uber App"—which Quartz broadly defines to include (1) "the passenger application,"[3] (2) "the driver application," (3) "Uber server," and (4) "all related technology."  *See, e.g., id.* ¶ 42.  Though Quartz asserts that it includes a "detailed mapping of direct infringement" for each Asserted Patent, it does no such thing.  Instead, paragraph after paragraph of the complaint blankly points to this fabricated "Uber App" as the alleged infringing actor, method or system.  *See, e.g., id.* ¶¶ 41–48 (alleging that the "Uber App" performs, specifies, stores, and determines), 49–53 (alleging that the "Uber App" "performs a system of implementing"); *see generally* Ex. 1.  Quartz compounds the confusion in its infringement allegation by co-mingling various components of the so-called "Uber App"—the passenger application, the driver application and Uber's servers—together with unrelated actors—the passenger, the driver and Uber.  In so doing, Quartz makes it impossible to decipher what or who allegedly satisfies the limitation.

Quartz goes on to allege—again with the same boilerplate language for each Asserted Patent—that "[Uber]'s actions have and continue to constitute active inducing infringement . . . in violation of 35 U.S.C. §271(b)."  *See, e.g.,* Compl. ¶ 54.  To start, Quartz fails to allege that Uber had any pre-suit knowledge of the Asserted Patents.  And like the direct infringement claims, Quartz's induced infringement claims, which appear tied to the drivers and passengers who use the alleged "Uber App," are devoid of any factual foundation.  Rather, for each Asserted Patent, Quartz only alleges that Uber induces infringement through its "promotion, advertising, and instruction efforts."  *See, e.g., id.* ¶ 37.  But Quartz identifies no facts that suggest Uber's "promotion, advertising, and instruction efforts" induce infringement of the Asserted Patents, nor

---

[3]  Uber refers to "the passenger application" pointed to by Quartz as the "Rider App" but will use the language provided by Quartz for consistency.

any facts that suggest Uber knew that any of its acts would infringe. Instead, Quartz only cites to (1) the passenger and driver applications, (2) Uber's website, and (3) the requirements for drivers to sign up. Demonstrative of the generic nature of these allegations is the fact that Quartz made near-verbatim allegations in its complaint against Lyft, Inc. *Compare* Ex. 2 ¶ 34, *with* Compl. ¶ 37.

Additionally, Quartz makes no factual allegations in support of its request for injunctive relief, e.g., how Quartz allegedly suffers irreparable harm. *See* Compl. ¶¶ 56, 79, 105, 147, 163, 185. Quartz merely repeats—for each of the Asserted Patents—that Uber's "wrongful acts have damaged and will continue to damage [Quartz] irreparably." *See id.* ¶ 56.

### III.   LEGAL STANDARDS

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege non-conclusory facts that make liability "plausible," meaning that they "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 556 (2007)); *see also Chalumeau Power Sys. LLC v. Alcatel-Lucent*, 2012 WL 6968938, at *2 (D. Del. Sept. 24, 2014) ("[T]here must be facts alleged that 'are sufficient to show that the plaintiff has a plausible claim for relief.'"). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotations marks omitted). Additionally, "under any pleading standard, a complaint must put a defendant 'on notice as to what he must defend.'" *Artrip v. Ball Corp.*, 735 Fed. Appx. 708, 715 (Fed. Cir. 2018) (affirming district court's dismissal of complaint that used broad functional language copied from patent).

Direct infringement requires that all elements of the claim be performed by or attributable to a single actor.  *Akamai Techs., Inc. v. Limelight Networks, Inc*., 797 F.3d 1020, 1022 (Fed. Cir. 2015) (en banc).  "Divided [or joint] infringement occurs when more than one actor is involved in practicing the steps and the acts of one are attributable to the other such that a single entity is responsible for the infringement."  *Int'l. Bus. Machines Corp. v. Bookings Holdings Inc.,* 775 Fed. Appx. 674, 678 (Fed. Cir. 2019) (internal quotation marks omitted).  In *Akamai*, the en banc Federal Circuit held that one entity is responsible for the acts of others "(1) where that entity directs or controls others' performance, and (2) where the actors form a joint enterprise."  *Akamai,* 797 F.3d at 1022.

"In order to succeed on a claim of inducement, the patentee must show, first that there has been direct infringement, and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement."  *Enplas Display Device Corp. v. Seoul Semiconductor Co., Ltd.*, 909 F.3d 398, 407 (Fed. Cir. 2018) (quoting *Minn. Mining & Mfg. Cor. v. Chemque, Inc.,* 303 F.3d 1294, 1304–05 (Fed. Cir. 2002)).  Over the last decade, the Supreme Court has twice addressed induced infringement.  First, in *Global-Tech Appliances, Inc. v. SEB S.A.*, the Court held that "induced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement."  563 U.S. 754, 766 (2011).  Shortly thereafter, in *Commil USA, LLC v. Cisco Sys., Inc.*, the Court confirmed that "liability for inducing infringement attaches only if the defendant knew of the patent and that the induced acts constitute patent infringement."  135 S. Ct. 1920 (2015) (internal quotation marks omitted).

Importantly, the pleading standards of *Twombly* and *Iqbal* apply to claims of induced infringement.  *Superior Indus., LLC v. Thor Glob. Enterprises Ltd.*, 700 F.3d 1287, 1295 (Fed. Cir. 2012).  Indeed, recognizing the applicability of *Twombly* and *Iqbal*, and also recognizing the

Supreme Court's recent holdings, this Court held that "[t]o adequately plead a claim of induced infringement, a plaintiff must demonstrate that 'the defendant knew of the patent and that the induced acts constitute patent infringement.'" *Parity Networks, LLC v. Cisco Sys., Inc.*, 2019 WL 3940952, at *2 (W.D. Tex. July 26, 2019) (quoting *Commil*, 135 S. Ct. at 1926). This holding follows decisions from the Federal Circuit, which explain that "[f]or an allegation of induced infringement to survive a motion to dismiss, a complaint must plead facts plausibly showing that the accused infringer 'specifically intended another party to infringe the patent and knew that the other party's acts constituted infringement.'" *Lifetime Indus., Inc., v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (quoting *In re Bill of Lading Transmission and Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (2012)).

## IV.    ARGUMENT

Quartz's claims of direct and induced infringement fail to meet the minimum pleading standards recognized by this Court, the Federal Circuit, and the Supreme Court; respectfully, therefore, the Court should dismiss these claims in their entirety. These defects also infect Quartz's venue allegations; having failed to identify what and who infringes, the complaint fails to establish a plausible basis that infringement occurs within this District as the patent venue statute demands. Similarly, because Quartz's demands for injunctive relief lack any factual basis to support a plausible inference that Quartz is entitled to a permanent injunction, they too should be dismissed.

### A.    Quartz Fails to Properly Plead Direct Infringement.

#### 1.    Quartz's Direct Infringement Claims Implicate, but Fail to Adequately Plead, Joint Infringement.

##### i.    Quartz Relies on Multiple Actors to Plead Direct Infringement.

In its complaint, Quartz does not identify a single actor to allege direct infringement. Instead, and as noted, Quartz relies on a construct of its own making—the so-called "Uber App,"

which includes no less than three different actors/components: (1) the passenger, (2) the driver, and (3) Uber.  *See, e.g.*, Compl. ¶¶ 42, 69, 92, 118, 159, 275.  For each "Count," Quartz points to a multiple of these three actors to satisfy one or more of the claim limitations.  For example, in paragraph 43, Quartz alleges that the "Uber App" infringes claim 1 of the '004 Patent by "specif[ying] an activity to be executed at an indeterminate destination location," by relying on the following screenshots from the "Uber Passenger Application," the "Uber Driver Application," and the Uber website:



Uber Passenger Application Screenshot February 11, 2020   Uber Driver Application Screenshot February 14, 2020   https://eng.uber.com/sessionizing-data/

Compl. ¶ 43.  But Quartz omits any explanation of which of the three identified actors (passenger, driver, or Uber) allegedly performs the claimed step; nor does Quartz allege how the acts of the passenger and driver are attributable to Uber.  *See id.* ¶¶ 42–48 ('004 Patent), 68–73 ('464 Patent), 91–95 ('085 Patent), 117–122 ('215 Patent), 158–160 ('616 Patent), 174–182 ('275 Patent).

On their face, these allegations implicate joint infringement by relying on multiple actors, since they fail to attribute all elements in any claim to a single actor.  "[A]llegations of joint infringement require elements beyond those for the more typical act of direct infringement."  *Lyda v. CBS Corp.*, 838 F.3d 1331, 1340 (Fed. Cir. 2016) (affirming district court's dismissal of complaint for failing to plausibly allege "direction or control").  For a complaint alleging joint infringement "[t]o survive a motion brought under Rule 12(b)(6), the [complaint] must plausibly

allege that [defendant] exercise[s] the requisite 'direction or control' over the performance of the claim steps, such that performance of every step is attributable to [defendant]." *Id.*

As this Court recently recognized, this requires pleading *factual* allegations sufficient to show that "(1) one party exercises the requisite 'direction and control' over the other's performance or (2) the actors form a joint enterprise such that performance of every step is attributable to the controlling party." *See Gabriel De La Vega v. Microsoft Corp.*, No. W-19-cv-612, Dkt. No. 29, slip op. at 6 (W.D. Tex. Feb. 7, 2020) (citing *Lyda*, 838 F.3d at 1339) ("*De La Vega*"). Quartz's complaint fails to allege either of these elements. In fact, like the plaintiff in *Lyda*, Quartz does not explicitly indicate whether Uber infringes the Asserted Patents under a single or joint theory of direct infringement. *Lyda*, 838 F.3d at 1339. But after relying on three separate actors to allege direct infringement, that omission does not erase Quartz's obligation to plead the requisite elements of joint infringement or face dismissal.

### ii. Every Method Claim Fails to Plead Direction and Control or Joint Enterprise.

With respect to direct infringement, for the method claims of every Asserted Patent,[4] Quartz ignores entirely the elements of joint infringement. The complaint includes no allegation of "direction and control," and the complaint includes no allegation of "joint enterprise." Rather, Quartz overtly attempts to bypass these requirements by pointing to the artificial "Uber App" that it constructed, asserting for each limitation that the "Uber App" "specifies an activity," "stores executable software code," "determines a current location," "determines whether the destination location is within a predefined proximity range," "executes the executable software code," and "transmits an address." *See* Compl. ¶¶ 42–48. While Quartz uses the word "control" in each of

---

[4] The method claims are 1–11 ('004 Patent), 1–19 ('464 Patent), all claims ('085 Patent), all claims ('215 Patent), 11–15 ('616 Patent), and 1–11 ('275 Patent).

its conclusory "Induced Infringement" paragraphs (Compl. ¶¶ 37, 64, 87, 113, 155, 171), it fails to include even a conclusory allegation of control, much less complete control, in its direct infringement paragraphs.  *See* Compl. ¶¶ 36, 40–53, 63, 67–76, 86, 90–102, 112, 116–144, 154, 157–160, 170, 173–182.  At bottom, Quartz makes no allegations regarding the relationship between Uber, the drivers, and the passengers, as it must.

### iii.   Quartz Treats the System and Computer Program Claims Like the Method Claims Thereby Obligating Itself to Plead Joint Infringement.

For the '616 and '275 Patents, Quartz alleges that the system and computer program claims[5] are "representative of" the method claims or vice versa.  *See id.* ¶¶ 157 ("System claim 1 of the '616 patent is representative of, and is of similar scope to method claim 11 and computer program claim 16 of the '616 patent."), 173 ("Method claim 1 of the '275 patent is representative of, and is of similar scope to computer program claim 12 of the '275 patent.").  Indeed, these system claims recite the same steps as the method claims, and Quartz treats them as such: for '275 Patent method Claim 1, Quartz alleges the "Uber App" "obtains . . . passenger information," and for '275 Patent system Claim 17, Quartz alleges the "Uber App is a system that performs a method to obtain passenger information."  *Compare id.* ¶ 175, *with* ¶ 181.  Given the overlapping language and overlapping allegations, the system and computer program claims should be treated as method claims for the purposes of pleading joint infringement.  *See Lyda*, 838 F.3d at 1339 ("[T]he purported system claims asserted in this case are, in fact, method claims because the body of the claims require the performance of particular method steps.").  And like the method claims discussed above, because Quartz fails to allege that Uber exercises direction or control, these allegations should also be dismissed.  *See id.* at 1340.

---

[5]  Specifically, these include claims 1–10 and 16–19 ('616 Patent) and claims 12–16 ('275 Patent).

While Quartz does not expressly acknowledge that the system claims[6] of the '004 and '464 Patents mimic the method claims (as it does for the '616 and '275 Patents), as the chart below illustrates, the language of the system claims tracks the steps of the method claims and should, for the purposes of pleading joint infringement, receive the same scrutiny as the method claims.

| Method Claim | | System Claim |
|---|---|---|
| '004 Claim 1: "storing an executable software code corresponding to the activity; determining a current location of a mobile computing device"  Compl. ¶¶ 44, 45 | | '004 Claim 12: "a server for storing an executable code corresponding to the activity and for determining a current location of a mobile computing device"  Compl. ¶ 52 |
| '464 Claim 1: "arranging at the vehicle device for an indication to be provided to the operator in accordance with the vehicle control information"  Compl. ¶ 73 | | '464 Claim 20: "a vehicle adapted to . . . (ii) arrange for an indication to be provided to the operator in accordance with the vehicle control information"  Compl. ¶ 76 |

Given the overlapping claim language, it is not surprising that Quartz treats the claims essentially the same where it purports to "map" its direct infringement claims.  For example, paragraph 52 (covering a limitation of the "system" claim of the '004 Patent) relies on the same screenshots as paragraphs 44 and 45 (covering the corresponding limitations of the "method" claim of the '004 Patent).  Likewise, because the so-called Uber App includes Uber servers, Quartz's allegation in paragraph 45 that the Uber App "determines a current location" is no different than its allegation in paragraph 52 that the Uber App uses a server "for determining a current location."

iv.     **Quartz Fails to Plead That Uber Controls "the Uber App" as a Whole and Obtains Benefit from Each and Every Claim Element.**

Critically, by relying on the fabricated "Uber App," which, again, includes Uber servers, the passenger application and the driver application, Quartz implicates multiple actors and

---

[6]  The '085 Patent and the '215 Patent contain *only* method claims.  Demonstrative of the imprecision of Quartz's complaint, in paragraphs 21 and 23, respectively, Quartz alleges the Uber ride-hailing *system* infringes the '085 and '215 Patents.

expressly alleges that Uber's "ride-hailing system and method" infringe by ***using*** both passenger and driver applications. *See, e.g.*, *id.* ¶ 51, 52 ('004 Patent) (alleging that the "Uber App uses . . ."). "[T]o 'use' a system for purposes of infringement, a party must put the invention into service, *i.e.*, control the system as a whole and obtain benefit from it." *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011) (citing *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1317 (Fed. Cir. 2005)). This requires proof that "the direct infringer obtained 'benefit' from each and every element of the claimed system." *Intellectual Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1329 (Fed. Cir. 2017); *see also Grecia v. McDonald's Corp.*, 724 Fed. Appx. 942, 946–47 (Fed. Cir. 2018) (affirming district court's dismissal of complaint because it failed to explain how defendant benefitted from each and every element of the claimed system). Not only does Quartz fail to allege that Uber controls the system as a whole, but Quartz also fails to allege facts showing how Uber has benefitted from each and every element of the claimed systems. *See id.*

Respectfully, the Court should dismiss Quartz's allegations of direct infringement for failing to identify a single alleged infringer and for failing to plead a theory of joint infringement.

### 2.   Screenshots Fail to Fill in the Gaps in Quartz's Deficient Pleadings.

Putting aside Quartz's failure to allege *who* is directly infringing, the direct infringement allegations also fail to provide notice of *what* is allegedly infringing. Instead, the allegations are nothing more than parroted claim language and screenshots without any narrative that explains what in the screenshots meets the claim elements or how the unidentified aspect in the screenshot infringes. *See generally* Ex. 1. As this Court recently held, such an approach fails to meet the pleading standards for direct infringement. *See De La Vega* at 11–13 (dismissing with prejudice direct infringement claims because complaint did not include any explanation as to how the screenshots of evidence performed a claim limitation); *see also N. Star Innovations, Inc. v. Micron*

*Tech., Inc.*, 2017 WL 5501489, at *2 (D. Del. Nov. 16, 2017), *adopted by* No. 1:17-cv-506, Dkt. #37, slip op. at 1 (D. Del. Jan. 3, 2018) ("There needs to be *some facts* alleged that articulate *why it is plausible* that the other party's product infringes that patent claim—not just the patentee asserting, in conclusory fashion, that it is so.") (emphasis in original).

Quartz's formulaic approach to pleading direct infringement is the same for each of the Asserted Patents—Quartz merely copies and pastes claim language (without using quotations around the language) at the beginning of each paragraph, followed by screenshots from Uber's driver and passenger applications, Uber's websites and third party websites.  *Compare* Compl. ¶¶ 40–53 ('004 Patent), *with id.* ¶¶ 67–76 ('464 Patent), 90–102 ('085 Patent), 116–144 ('215 Patent), 157–160 ('616 Patent), 173–182 ('275 Patent).  For all 197 screenshots included in the complaint, Quartz provides no written description or explanation as to the relevance of the screenshot.  This Court and courts in other districts have dismissed complaints that provided *more* detail.  *See De La Vega* at 11–13 (dismissing complaint that contained a written description with the screenshots for some but not all of the claim limitations); *Chan Soo Kim v. Green Tea Ideas, Inc.*, 2018 WL 1172998, at *2 (E.D. Va. Mar. 6, 2018) (dismissing direct infringement claims when the complaint merely copied and pasted patent language and inserted a photograph of the accused product with written notations for some of the claim elements); *Promos Techs., Inc. v. Samsung Elecs. Co*., 2018 WL 5630585, at *4 (D. Del. Oct. 31, 2018) (finding direct infringement claims "with slight alterations to claim language" insufficient under 12(b)(6)).

Quartz's approach is exemplified in its allegations of direct infringement for claim 1 of the '004 Patent at paragraphs 41 to 48 of the complaint.  In support of the allegation that "the Uber App specifies an activity to be executed at an indeterminate destination location," as called for verbatim by the claim, Quartz provides only the three screenshots shown above in Section IV.A.1.i.

12

*See* Compl. ¶ 43.  Quartz leaves the reader to guess how these screenshots, which purportedly originate from the passenger and driver applications and Uber's website, correspond to the claimed "activity" and "indeterminate destination location."  The first screenshot includes two locations as indicated by the two black placeholders on the map.  The second screenshot—taken on a different day—includes a different location.  And the text of the third screenshot references picking up and dropping off a passenger without identifying *any* location.  Moreover, as explained above, by collectively referencing the driver, passenger and Uber server via the so-called "Uber App," Quartz provides no notice of who actually performs this step.  Lacking even a cursory explanation, the complaint fails to put Uber on notice of who or what allegedly infringes this claim limitation, much less how it allegedly infringes this claim limitation.  *See Artrip*, 735 Fed. Appx. at 708.

The deficiencies in this approach permeate Quartz's direct infringement allegations for each Asserted Patent.  For example, Quartz's direct infringement allegation for claim 1 of the '215 Patent again repeats the claim language, followed by screenshots, as paragraph 119 of the complaint illustrates.  There, Quartz states that "the Uber App automatically detects availability of a first candidate to respond to a problem condition," followed by the below screenshots:



https://www.uber.com/us/en/about/how-does-uber-work/



https://developer.uber.com/docs/riders/ride-requests/tutorials/api/best-practices#indicating-ride-status-throughout-application



https://www.uber.com/newsroom/semi-automated-science-using-an-ai-simulation-framework

13



Uber Passenger Application Screenshot February 13, 2020 *(emphasis added in red)*



Uber Driver Application Screenshot February 14, 2020

Compl. ¶ 119.  Here again, Quartz includes screenshots from multiple sources, including Uber's website, the passenger application, and the driver application.   The screenshots have no relationship to one another, and Quartz leaves the reader to guess *what* Quartz contends is the claimed "first candidate" (i.e., the passenger application screenshot appears to have five candidates), *what* in the so-called Uber App detects the availability of the first candidate, or even *what* Quartz contends is the claimed "problem condition."   Indeed, these screenshots include multiple cars—three cars in the first image, three cars in the third image, and six cars in the fourth image (as indicated by the red circles).

Quartz, moreover, compounds the confusion surrounding its allegations by using the *same* screenshot for multiple claim limitations of a single claim.   For example, Quartz uses the screenshot below to allege infringement of four separate limitations of claim 17 of the '275 Patent ((i) "memory," (ii) "one or more processor . . .", (iii) "program instructions executable . . .", (iv) "obtaining passenger information . . ."):

"In cities where Uber is available, you can use the Uber app to request a ride. When a nearby driver accepts your request, the app displays an estimated time of arrival for the driver heading to your pickup location. The app will notify you when the driver is about to arrive.

The Uber app also provides info about the driver with whom you will ride, including first name, vehicle type, and license plate number. This info helps the two of you connect at your pickup location."

https://help.uber.com/riders/article/how-does-uber-work?nodeId=738d1ff7-5fe0-4383-b34c-4a2480efd71e

14

*See* Compl. ¶¶ 178–181.  Additionally, Quartz uses this same screenshot in support of allegations covering another claim and another asserted patent (e.g., claim 1 of the '275 Patent, claims 1 and 20 of the '464 Patent), and each time, Quartz fails to explain or otherwise describe how the subject matter in the screenshot allegedly shows elements of the asserted claims.  *See id.* ¶¶ 69, 75.  This makes it impossible to decipher *what* in the screenshot supposedly meets the claim limitations.

The lack of detail in the complaint fails to put Uber on notice as to how the so-called "Uber App" infringes the Asserted Patents.  *See Artrip*, 735 Fed. Appx. at 708.  Because the complaint merely contains conclusory allegations that the Uber App infringes, these allegations are not entitled to any inference that Quartz may be entitled to relief.  *See generally* Ex. 1.  As such, the complaint fails to plausibly state a claim to relief and the direct infringement allegations should be dismissed in their entirety.  *See De La Vega* at 11–13 ("Because Plaintiff does not include even a short written description of how the accused instrumentalities meet the 'coupling' limitation, his complaint fails to state a claim upon which relief can be granted.").

**B.    Quartz Fails to Properly Plead Claims of Induced Infringement.**

Quartz's induced infringement claims also fail to meet the minimum pleading requirements and should therefore be dismissed in their entirety.

**1.    Quartz's Indirect Infringement Claims Fail Without Direct Infringement.**

It is well established that "[a] finding of direct infringement is predicate to any finding of indirect infringement."  *Intellectual Ventures I*, 870 F.3d at 1331; *see also DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1303 (Fed. Cir. 2006) ("[T]he patentee always has the burden to show direct infringement for each instance of indirect infringement.").  As explained above, Quartz fails to allege a plausible claim for direct infringement.  Because direct infringement is required for indirect infringement, this failure necessitates dismissal of the claims for indirect infringement.

**2. The Complaint Fails to Allege Pre-Suit Knowledge of the Asserted Patents.**

There can be no claim for induced infringement where the accused infringer lacked knowledge of the asserted patent. Knowledge of the asserted patent arising solely from the patentee's complaint is not sufficient; instead, the patentee must allege pre-suit knowledge of the asserted patent to maintain its claim—even for conduct that occurs after the filing of the complaint. *See Parus Holdings Inc. v. Apple Inc.*, 6:19-cv-432 (W.D. Tex. Feb. 20, 2020) (dismissing indirect infringement claims in their entirety when plaintiff's only allegation of knowledge was the filing of the lawsuit); *Parus Holdings Inc. v. LG Elecs. Inc.*, 6:19-cv-437 (W.D. Tex. Feb. 20, 2020) (same); *Parus Holdings Inc. v. Google LLC*, 6:19-cv-433 (W.D. Tex. Feb. 20, 2020) (same); *Parus Holdings Inc. v. Samsung Elecs. Co., Ltd.*, 6:19-cv-438 (W.D. Tex. Feb. 20, 2020) (same); *Aguirre v. Powerchute Sports, LLC*, 2011 WL 2471299, at *3 (W.D. Tex. June 17, 2011) ("To the extent Aguirre relies on knowledge of Aguirre's patent after the lawsuit was filed, such knowledge is insufficient to plead the requisite knowledge for indirect infringement."); *Xpoint Techs., Inc. v. Microsoft Corp.*, 730 F. Supp. 2d 349, 357 (D. Del. 2010) ("[K]nowledge after filing of the present action is not sufficient for pleading the requisite knowledge for indirect infringement."); *Mallinckrodt, Inc. v. E-Z-Em Inc.*, 670 F. Supp. 2d 349, 354 n.1 (D. Del. 2009) ("The Court is not persuaded by plaintiffs' contention that the requisite knowledge can be established by the filing of the Plaintiffs' Complaint."); *Proxyconn Inc. v. Microsoft Corp.*, 2012 WL 1835680, at *6 (C.D. Cal. May 16, 2012) ("[R]equiring a Plaintiff to plead knowledge based on facts other than the filing of the present lawsuit furthers judicial economy and preserves parties' resources by encouraging resolution prior to filing a lawsuit.").

Here, Quartz does not allege pre-suit knowledge. Instead, Quartz only alleges knowledge obtained "by the filing of th[e] Complaint." *See* Compl. ¶¶ 37, 64, 87, 113, 155, 171. This defect requires dismissal of Quartz's induced infringement claims.

### 3.    Quartz's Allegations of Induced Infringement Are Insufficient.

As the cases make clear, pleading induced infringement requires both knowledge that the induced acts constituted infringement and specific intent.  In particular, specific intent requires more than just general allegations of intent.  Instead, "a plaintiff must allege a specific intent to induce infringement, which is 'evidence of culpable conduct, direct to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities.'" *Parity Networks*, 2019 WL 3940952, at *2 (quoting *DSU Med.*, 471 F.3d at 1306).  Rather than pleading facts, Quartz alleges that Uber caused acts "which it knew or should have known would induce actual infringement" and that it "has and continues to promote, advertise, and instruct current drivers and passengers, and potential drivers about Uber products."  *See, e.g.*, Compl. ¶ 37.

This boilerplate statement fails to present a set of facts that demonstrate (1) Uber knew that its alleged induced acts infringed, and (2) Uber knew that the promotion of its service would induce or encourage others to infringe the Asserted Patents.  *See Fluidigm Corp. v. IONpath, Inc.*, 2020 WL 408988, at *3 (N.D. Cal. Jan. 24, 2020) ("Specific intent means an intent to encourage infringement. The question is not just whether [product] instructions describe the infringing mode, but whether the instructions teach an infringing use of the device such that [a court may] infer from those instructions an affirmative intent to infringe the patent.") (internal quotation marks omitted) (alterations in original).

Though Quartz cites to Uber's website pages, Quartz fails to point to any statements in those pages that would demonstrate a specific intent to induce or encourage infringement.  These references are simply "too generic to plausibly conclude defendant's 'affirmative intent' to *induce others* to infringe."  *Fluidigm Corp.*, 2020 WL 408988 at *3 (emphasis in original); *see also Hypermedia Navigation LLC v. Google LLC*, 2019 WL 1455336, at *3 (N.D. Cal. Apr. 2, 2019) ("In no way does the complaint detail *how* an end user would infringe Hypermedia's patents by

17

following instructions in the links provided in the complaint.") (emphasis in original); *see also Avocet Sports Tech., Inc. v. Garmin Intern., Inc.*, 2012 WL 2343163, at \*4 (N.D. Cal. June 5, 2012) (providing parties with "instruction" and "training" insufficient to plead specific intent to induce infringement).

At bottom, Quartz fails to plead both Uber's knowledge that its alleged induced acts constituted infringement and specific intent. The complaint contains only conclusory allegations and threadbare recitations of the elements for joint infringement, which are not entitled to the assumption of truth. As a result, and separate from Quartz's defective allegations of knowledge of the Asserted Patents, the entirety of Quartz's inducement claims should be dismissed.

## C.   Venue Is Improper Because Quartz Fails to Point to an Act of Infringement Within This District for Each Asserted Patent.

Venue for a domestic corporation accused of patent infringement is proper only where the defendant either (1) is incorporated, or (2) commits acts of infringement and has a regular and established place of business. *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1514 (2017); 28 U.S.C. § 1400(b). Merely parroting the language of § 1400(b) does not satisfy a plaintiff's burden to plead specific facts showing that venue is proper. *Westech Aerosol Corp. v. 3M Co.,* 927 F.3d 1378, 1382 (Fed. Cir. 2019). Here, that is all Quartz does. *See* Compl. ¶ 8. While Quartz alleges that Uber "has committed or induced acts of infringement . . . in this judicial district," it fails to identify facts showing any such acts occurred in the District. *Id.* Moreover, because Quartz has also failed to properly plead direct and induced infringement, Quartz cannot fall back on simply having alleged infringement to satisfy this element of the patent venue statute. *See, e.g., Sudenga Indus., Inc. v. Global Indus., Inc.,* 2018 WL 9811114, \*3–4 (N.D. Iowa Sept. 14, 2018) (finding that although an infringing act need not be established on the merits for venue, plaintiff did not establish venue where it failed to plausibly allege infringement).

More specifically, Quartz has not pleaded facts that suggest that Uber directs or controls the performance of the passengers and drivers, nor has Quartz pleaded facts that suggest Uber along with the passengers and drivers forms a joint enterprise.  Accordingly, Quartz cannot rely on any acts of the passengers or drivers to establish venue.  Beyond this pleading deficiency, the complaint also fails to allege that the Uber servers are in this District and hence that Uber through its servers performs any acts of infringement in this District.  *See In re ZTE (USA) Inc.*, 890 F.3d 1008, 1014 (Fed. Cir. 2018) (plaintiff bears burden to establish venue is proper under 28 U.S.C. §1400(b)).  The complaint is devoid of any clear statement of who is actually the direct infringer.

Likewise, and as shown above, Quartz's induced infringement claims fail to meet the pleading standards defined by the Supreme Court and Federal Circuit, and those claims should be dismissed.  As a result, Quartz cannot rely on alleged acts of induced infringement to support venue.  This is true because absent the identification of a single entity that directly infringes, Quartz cannot establish that Uber induces that unknown entity to infringe in this District.  And next, absent an assertion of knowledge of the Asserted Patents, Uber could not knowingly induce others to infringe—here or anywhere.  Just as venue must be proper as to each and every defendant, venue must also be proper as to each asserted patent.  *Digital Equip. Corp. v. Elec. Memories & Magnetics Corp.*, 452 F. Supp. 1262, 1266 (D. Mass. 1978) ("[A plaintiff] must establish proper venue as to *each* patent allegedly infringed.") (emphasis added); *Datascope Corp. v. SMEC, Inc.*, 561 F. Supp. 787, 789 (D.N.J. 1983).  Quartz fails to allege that venue is proper for every Asserted Patent especially given the different patents and claims.  *See Digital*, 452 F. Supp. at 1266 ("The rationale behind this requirement becomes apparent when one considers the difficulties potentially involved in determining whether, in a given instance, two patents are sufficiently interrelated or share a sufficiently similar technology as to bind them together for venue purposes.").

**D.      Quartz's Boilerplate Request for Injunctive Relief Should Be Dismissed.**

Quartz's request for injunctive relief suffers from the same defects as its direct and induced infringement claims—Quartz fails to allege any facts that would plausibly support a finding that it is entitled to a permanent injunction.  A plaintiff seeking a permanent injunction must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).  In the complaint, Quartz merely regurgitates this language without so much as making a single factual allegation to support its request.  This "formulaic recitation of the elements" necessary for a permanent injunction is wholly inadequate at the pleading stage, particularly when the plaintiff is a non-practicing entity that just acquired the patents.  *See M & C Innovations, LLC v. Igloo Prods. Corp.*, 2018 WL 4620713, at *6 (S.D. Tex. July 31, 2018); *see also Twombly*, 550 U.S. at 555.  As such, the Court should dismiss Quartz's request for injunctive relief.

## V.      CONCLUSION

For the foregoing reasons, Uber respectfully requests that the Court grant its motion and dismiss Quartz's complaint in its entirety for failure to plausibly state a claim for relief and improper venue.  Pursuant to L.R. CV-7(h), Uber requests an oral hearing on the foregoing motion.

Dated:  April 17, 2020

By:    */s/ Mark N. Reiter*
Mark N. Reiter
Lead Attorney
Texas State Bar No. 16759900
**GIBSON, DUNN & CRUTCHER LLP**
2001 Ross Avenue, Suite 2100
Dallas, TX  75201-6912
Telephone:  214.698.3360
Facsimile:  214.571.2907
Email:  mreiter@gibsondunn.com

*/s/ Melissa R. Smith*
Melissa R. Smith
Texas State Bar No. 24001351
**GILLIAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: 90.934.8450
Facsimile: 903.934.9257
Email:  melissa@gilliamsmithlaw.com

*Attorneys for Defendant Uber Technologies, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 17, 2020, the foregoing was filed electronically in compliance with Local Rule CV-5(b)(1) and served via the Court's electronic filing system on all counsel who have consented to electronic service on this 17th day of April, 2020.

*/s/ Mark N. Reiter*
Mark N. Reiter