**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

QUARTZ AUTO TECHNOLOGIES LLC,

        Plaintiff,

   v.

UBER TECHNOLOGIES, INC.,

        Defendant.

**Case No. 1:20-cv-00720-ADA**

**DEFENDANT'S RENEWED MOTION TO DISMISS**

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION                                                                                          1

II.  FACTUAL BACKGROUND                                                                     3

III. ARGUMENT                                                                                           5

   A.   The '215 and '275 patents should be dismissed for improper venue.               5

      1.   Venue must be proper for *each* asserted patent.                              5

      2.   Pendent venue does not apply to patent cases.                                 6

         a.   Pendent venue is a loophole for improperly-venued claims.            6

         b.   Pendent venue does not apply to patent infringement claims.          6

         c.   Quartz relies on inapposite cases in its effort to use pendent venue.   9

   B.   Quartz's direct infringement claims must be dismissed with prejudice.          10

      1.   Quartz's allegations regarding direct infringement of the method claims fail.   10

         a.   For the '004 patent, Quartz fails to allege "direction or control" over the riders.   10

         b.   By alleging that the "Uber Platform" performs the claimed method steps, Quartz fails to state a claim with respect to the method claims.   11

      2.   Quartz's allegations regarding direct infringement of the system claims fail.   14

         a.   Quartz's allegations of the *use* of the system claims for the '004 and '464 patents conflict with the law and must be dismissed.   14

         b.   Quartz's allegations of the *making* of the system claims for the '004 and '464 patents also conflict with the law and must be dismissed.   15

   C.   All of Quartz's induced infringement claims must be dismissed with prejudice.   17

      1.   Quartz relies on overruled law.                                          17

      2.   All of Quartz's induced infringement claims fail to identify a third party direct infringer who alone infringes all elements.   18

   D.   Quartz's new boilerplate testing-based allegations must be dismissed.         20

IV.  CONCLUSION                                                                                    20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
  692 F.3d 1301 (Fed. Cir. 2012) ................................................................................................18

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
  797 F.3d 1020 (Fed. Cir. 2015) .........................................................................................11, 13

*Anderson v. Scandrett*,
  19 F. Supp. 681 (D. Minn. 1937) ..............................................................................................8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................................11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................................11

*Bio-Rad Labs., Inc. v. 10X Genomics, Inc.*,
  2020 WL 2079422 (D. Mass. Apr. 30, 2020) ..........................................................................10

*Cal. Expanded Metal Prods. Co. v. Klein*,
  2018 WL 2041955 (C.D. Cal. Apr. 30, 2018) ...........................................................................9

*Centillion Data Sys. LLC v. Quest Commc'ns Int'l Inc.*,
  631 F.3d 1279 (Fed. Cir. 2011) .................................................................................14, 16, 17

*Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*,
  246 F.3d 1336 (Fed. Cir. 2001) ...............................................................................................18

*Datascope Corp. v. SMEC, Inc.*,
  561 F. Supp. 787 (D.N.J. 1983) ................................................................................................8

*Digit. Equip. Corp. v. Elec. Memories & Magnetics Corp.*,
  452 F. Supp. 1262 (D. Mass. 1978) ......................................................................................7, 8

*Dow Chem. Co. v. Metlon Corp.*,
  281 F.2d 292 (4th Cir. 1960) ....................................................................................................8

*Finjan, Inc. v. Secure Computing Corp.*,
  626 F.3d 1197 (Fed. Cir. 2010) ...............................................................................................12

*France Telecom S.A. v. Marvell Semiconductor Inc.*,
  2014 WL 4272771 (N.D. Cal. Aug. 28, 2014) ........................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

*Gabriel De La Vega v. Microsoft Corp.*,
   2020 WL 3528411 (W.D. Tex. Feb. 7, 2020) ................................................................4, 20

*Garrel v. NYCLCare Health Plans, Inc.*,
   1999 WL 459925 (S.D.N.Y. June 29, 1999) ............................................................6

*Glob. Protection Corp. v. Arthur*,
   No. 1:18-cv-10966, slip op. (D. Mass. Sept. 20, 2018) ............................................9

*Gremillion v. Lockheed Martin Corp. Group Benefits Plan*,
   2015 WL 3863375 (E.D. La. June 22, 2015) ..........................................................6

*Hoffacker v. Bike House*,
   540 F. Supp. 148 (N.D. Cal. 1981) .......................................................................8

*i4i Ltd. P'ship v. Microsoft Corp.*,
   598 F.3d 831 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011) ......................................12

*IPXL Holdings, L.L.C. v. Amazon.com, Inc.*,
   430 F.3d 1377 (Fed. Cir. 2005)............................................................................13

*Jenny Yoo Collection, Inc. v. Watters Design Inc.*,
   2017 WL 4997838 (S.D.N.Y. Oct. 20, 2017) ..........................................................9

*Kalvar Corp. v. Memorex Corp.*,
   386 F. Supp. 273 (E.D. La. 1974) ....................................................................7, 8

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
   572 U.S. 915 (2014).........................................................................................18

*Lucent Techs., Inc. v. Gateway, Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009).............................................................................12

*Lyda v. CBS Corp.*,
   838 F.3d 1331 (Fed. Cir. 2016)............................................................................14

*Lyon v. General Motors Corp.*,
   200 F. Supp. 89 (N.D. Ill. Nov. 7, 1961) ..............................................................8

*Mirror Worlds, LLC v. Apple, Inc.*,
   784 F. Supp. 2d 703 (E.D. Tex. 2011), *aff'd*, 692 F.3d 1351 (Fed. Cir. 2012) ................13, 20

*Nat'l Prod., Inc. v. Arkon Res., Inc.*,
   2018 WL 1457254 (W.D. Wash. Mar. 23, 2018) ....................................................9

# TABLE OF AUTHORITIES

**Page(s)**

*Nissei ASB Co. v. R&D Tool & Eng'g Co.*,
    2018 WL 9961069 (N.D. Ga. Nov. 9, 2018) ...................................................................9, 10

*Norkol/Fibercore, Inc. v. Gubb*,
    279 F. Supp. 2d 993 (E.D. Wis. 2003).................................................................................6

*NTP, Inc. v. Research in Motion, Ltd.*,
    418 F.3d 1282 (Fed. Cir. 2005)..........................................................................................13

*In re Nuijten*,
    500 F.3d 1346 (Fed. Cir. 2007)..........................................................................................13

*Olivia Garden, Inc. v. Stance Beauty Labs, LLC*,
    2018 WL 3392063 (N.D. Cal. July 12, 2018)......................................................................9

*Omega Patents, LLC v. CalAmp Corp.*,
    2017 WL 4990654 (M.D. Fla. Sept. 22, 2017)................................................................9, 10

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
    843 F.3d 1315 (Fed. Cir. 2016)..........................................................................................17

*Schnell v. Peter Eckrich & Sons, Inc.*,
    365 U.S. 260 (1961)..........................................................................................................7, 8

*Schroeder v. Owens-Corning Fiberglas Corp.*,
    326 F. Supp. 594 (C.D. Cal. 1971) ......................................................................................8

*Shure, Inc. v. ClearOne, Inc.*,
    2018 WL 3032851 (N.D. Ill. Mar. 16, 2018).......................................................................9

*Stonite Prods. Co. v. Melvin Lloyd Co.*,
    315 U.S. 561 (1942)..............................................................................................................7

*TC Heartland LLC v. Kraft Foods Group Brands LLC*,
    137 S. Ct. 1514 (2017).......................................................................................................7, 8

*VE Holding Corp. v. Johnson Gas Appliance Co.*,
    917 F.2d 1574 (Fed. Cir. 1990)............................................................................................7

*Wet Sounds, Inc. v. PowerBass USA, Inc.*,
    2018 WL 1811354 (S.D. Tex. Apr. 17, 2018) ......................................................................9

## TABLE OF AUTHORITIES

**Page(s)**

**Statutes**

28 U.S.C. § 1400(b) ..........................................................................................................3, 5, 6, 7

35 U.S.C. § 101 ...................................................................................................................2, 13

**Other Authorities**

MPEP § 2106.03 .....................................................................................................................14

## I.    INTRODUCTION

As Defendant Uber Technologies, Inc. ("Uber") explained in its motion to dismiss the Original Complaint, this case began with a patent yard sale held by IBM, whereby IBM sold over 500 patents, including the six patents Plaintiff Quartz Auto Technologies LLC's ("Quartz") asserts against Uber.  As frequently happens with items purchased at yard sales, what one envisions at the time of the sale, even after paint and polish, does not always work out.  That is what Quartz faces here.  The asserted IBM patents focus on traditional technologies that often involve two principal components, for example, a client and a server.  In contrast, Uber's modern transportation marketplace relies on unique technology that facilitates transactions involving riders and drivers, and thus involves three independent, principal components—Uber, the rider, and the driver.  This fundamental difference has frustrated Quartz in its effort to apply the former-IBM patents to the Uber technology.  And so, just as with the Original Complaint, the First Amended Complaint ("FAC") fails to plausibly allege *what* infringes, *who* infringes, and *where* the infringement allegations belong.

Starting with *where*, in the FAC, Quartz recognizes that venue does not exist for at least two of the patents: U.S. Patent Nos. 7,958,215 and 9,691,275.  Indeed, as pled in the FAC, Quartz focuses infringement on operations allegedly performed by Uber's servers.  But because Uber has no servers in the District, Quartz has no basis to allege an act of infringement in the District as § 1400(b) requires and, hence, no basis to assert these patents in this Court.  Undeterred, and oblivious to the wealth of contrary cases, Quartz attempts to circumvent the strict requirements of § 1400(b) by way of the doctrine of pendent venue.  As the cases have long recognized, however, that doctrine does not override congressional intent and does not apply to patent cases.  Venue is not proper for at least these two patents and they must be dismissed.

1

With respect to *what* and *who* infringes, Quartz confuses the two.  Across the six asserted patents, Quartz primarily asserts method claims; as such, Quartz must show that a person performs the series of acts claimed.  Rather than own that obligation, and in its effort to force the asserted patents onto Uber's three-party marketplace, Quartz identifies a so-called "Uber Platform"—a Quartz-inspired amalgamation of hardware and software—that allegedly performs the claimed method steps.  While hardware and software may comprise a system—Quartz actually alleges that the "Uber Platform" infringes the asserted system claims—a system does not equate to a method.  In fact, the Patent Statute treats systems (*i.e.*, "machines") and methods (*i.e.*, "processes") as separate statutory classes of invention.  *See* 35 U.S.C. § 101.  By conflating who allegedly infringes with what allegedly infringes, Quartz fails in its obligation to provide proper notice of how the asserted method claims are allegedly infringed.  Those allegations must be dismissed.

Uber's three-party marketplace also upsets Quartz in its effort to allege direct infringement of the system claims, where Quartz must identify *who* puts all elements of the system into "use" or combines all elements of those elements to "make" the system.  As noted, the alleged infringing system is the so-called "Uber Platform," and, according to Quartz, that "Platform" includes both the Driver app and the Rider app.  But in the FAC, Quartz fails to identify how a driver puts into use the Rider app, and, conversely, how the rider puts into use the Driver app, much less how either the rider or the driver alone combines the two apps to complete the alleged infringing system.  These claims, too, must be dismissed.

Likewise, Uber's three-party marketplace impedes any claim of induced infringement because Quartz cannot identify a separate, third party who directly infringes.  Indeed, where there has been no direct infringement there can be no inducement.  For some patents, Quartz alleges that Uber induces the driver's infringement, and for other patents, Quartz alleges that Uber induces the

rider's infringement.  But for no patent does Quartz allege how the rider or the driver directly

infringe, *i.e.*, perform all claimed steps or use/make the whole of the claimed system.  The three-

party marketplace does not fit into these one- or two-party patents and dismissal is warranted.

The efforts Quartz undertook to paint and polish these former IBM patents has not changed

what the patents claim.  They do not claim Uber's three-party transportation marketplace, and they

do not belong in this District.  As a result, Uber respectfully requests that the Court grant this

motion and enter the attached order.

## II.     FACTUAL BACKGROUND

On February 18, 2020, Quartz filed a complaint alleging that Uber infringed six patents[1]

through its "ride-hailing system and method."  ECF No. 1, Case No. 6:20-cv-126 (hereinafter

"Original Complaint").  In the Original Complaint, Quartz alleged theories of direct and induced

infringement based on a so-called "Uber App," which Quartz alleged included various

components. *See, e.g.*, *id.* ¶ 42.  Rather than allege how these components infringed the asserted

patents, Quartz quoted claim language, pasted screenshots after the claim language without

explanation, and expected Uber to decipher the puzzle.  For each patent, that puzzle included pieces

based on Uber, the driver, and the rider, as well as the Uber server, driver application, and rider

application.  But beyond failing to explain how the pieces of the three parties fit, the Original

Complaint also failed to plead joint infringement, failed to plead pre-suit knowledge, failed to

identify a third party whom Uber allegedly induced to infringe, and failed to properly plead venue.

Uber timely filed a motion to dismiss.  ECF Nos. 12, 16, Case No. 6:20-cv-126.  At the

hearing on the motion, the Court granted Quartz leave to amend its Original Complaint, providing

---

[1] The six asserted patents are U.S. Patent Nos. 6,446,004 (the "'004 Patent"); 6,807,464 (the "'464 Patent"); 7,370,085 (the "'085 Patent"); 7,958,215 (the "'215 Patent"); 9,460,616 (the "'616 Patent"); and 9,691,275 (the "'275 Patent") (collectively, the "Asserted Patent(s)").

Quartz as much time as it needed to address all of the issues but also expressing an expectation that the amendment resolve all of the issues.  *See generally* Hr'g Tr. at 39:12–40:3.

On September 4, 2020, Quartz filed its FAC, which, like the Original Complaint, alleges infringement based on a system of Quartz's own making—now called the "Uber Platform."  ECF No. 46.  In the FAC, Quartz has shifted from the so-called "Uber App" to a so-called "Uber Platform," which Quartz alleges encompasses "all such hardware, applications and functionalities and any related Uber technologies that interface with the Uber Driver and Rider apps and server systems to provide ride-hailing systems."  *Id.* ¶ 37.

The FAC constitutes a complete overhaul of the allegations presented in the Original Complaint and represents a fundamental shift in the structure of the case.  For example, the FAC, for the first time, presents allegations that Uber servers alone infringe ('215 and '275 patents); the Uber servers and the Driver app, *absent* the Rider app, infringe ('616 patent); and Uber servers and the Driver app, integrated as a single unit, along with the Rider app infringe ('004, '464 and '085 patents).  Additionally, Quartz includes new legal theories (*i.e.*, "pendent venue") for the '215 and '275 patents (FAC ¶¶ 12, 14), testing-based infringement allegations for each asserted patent (*e.g.*, FAC ¶¶ 71, 76–77), alleges drivers are Uber employees (*e.g.,* FAC ¶¶ 38, 71, 119, 161, 245)[2] and separately addresses the method and system/computer program product claims.  This Court has expressed concern over such substantial changes in theories between an original and an amended complaint.  *See, e.g.*, *Gabriel De La Vega v. Microsoft Corp.*, 2020 WL 3528411, at *4 (W.D. Tex. Feb. 7, 2020).  But even with these substantial changes, the FAC remains deficient.[3]

Before it filed the FAC, Quartz served Uber with its infringement contentions, which

---

[2]  Uber objects to, and will contest, Quartz's allegation that the drivers are Uber employees.

[3]  Morgan Decl., Ex. 3.

themselves were deficient.[4]  The deficiencies and ambiguities present in the contentions, coupled with the deficient and confusing allegations appearing in the FAC, which do not match the allegations in the contentions, prevent Uber from determining with certainty who or what Quartz alleges infringes the asserted patents.[5]  On September 29, 2020, Quartz narrowed its asserted claims, including dropping all computer program product claims, and thus this motion addresses the narrowed set of claims.[6]

### III.    ARGUMENT

**A.    The '215 and '275 patents should be dismissed for improper venue.**

### 1.    Venue must be proper for *each* asserted patent.

Recognizing that it must separately support venue for each asserted patent, Quartz has included separate venue allegations for each patent.  FAC ¶¶ 9–14.  For the '004, '464, '085, and '616 patents, Quartz relies on the acts of drivers, who Quartz, for the first time, asserts are Uber employees, to allege that Uber commits an act of infringement in the District and thereby support venue under 28 U.S.C. § 1400(b).  *Id.* ¶¶ 9–11, 13.  For the '215 and '275 patents, however, Quartz does not allege that Uber has committed an act of infringement in the District.  Instead, Quartz alleges that "[b]ecause . . . [Uber] has committed acts of infringement of *the other Asserted Patents* in this District, [Quartz] thus alleges that venue is proper as to the '215 and ['275] patent[s] under principles of pendent venue."[7]  *Id.* ¶¶ 12, 14 (emphasis added).

---

[4]  Morgan Decl., Ex. 1.

[5]  Uber has written Quartz requesting revised contentions that account for the inconsistencies as well as the source code Uber has made available for inspection.  Morgan Decl., Ex. 2.

[6]  Morgan Decl., Ex. 4.

[7]  In conclusory form, Quartz alleges that "discovery will confirm" Uber has "directly performed one or more steps of the accused methods on one or more servers located in this District."  FAC ¶¶ 12, 14.  Discovery, however, will confirm Uber has no servers in the District.  *See* Decl. of Jeff Rapipong ¶ 2 (confirming that Uber has no servers in Texas); *see also* Hr'g Transcript at 20:13-16 (counsel representing to the Court that Uber has no servers in the District).

2.        **Pendent venue does not apply to patent cases.**

a.  **Pendent venue is a loophole for improperly-venued claims.**

The principles of pendent venue are not applicable to this case.  In certain non-patent cases,

"[t]he doctrine of pendent venue allows a court to hear an improperly venued claim if it is joined

in a suit with a claim that is properly venued, and the claims arise out of a common nucleus of

operative fact."  *Gremillion v. Lockheed Martin Corp. Group Benefits Plan,* 2015 WL 3863375,

*2 (E.D. La. June 22, 2015) (further noting that "courts in the Fifth Circuit typically reject

opportunities to apply [pendent venue].").  Typically, courts use pendent venue, which does not

arise from statute but is a judicially created doctrine, to exercise venue over a state claim that arises

out of a common nucleus of operative fact as that of a properly-venued federal claim.  *See, e.g.*,

*Garrel v. NYCLCare Health Plans, Inc.*, 1999 WL 459925, at *4 (S.D.N.Y. June 29, 1999).

Pendent venue, however, does not provide a means to "circumvent" special venue provisions

imposed by Congress:

> Where claims are governed by a special venue statute such as § 1400(b), which
> limits venue to specified districts, such claims may be brought only in a district
> specified by the statute.  This is so because congressional intent to limit the
> available districts is clear and cannot be circumvented.

*Norkol/Fibercore, Inc. v. Gubb*, 279 F. Supp. 2d 993, 999 (E.D. Wis. 2003) (internal citations

omitted).  In cases involving multiple federal claims, courts must adhere to and give priority to

any specific venue statutes applicable to those federal claims.  *See Garrel*, 1999 WL 459925 at *4.

b.  **Pendent venue does not apply to patent infringement claims.**

While the Federal Circuit has neither recognized the doctrine of pendent venue nor

approved its application to patent cases, the Supreme Court has held repeatedly that the specific

venue requirements specified by Congress in § 1400(b) take priority over other venue statutes and

doctrines.  *See TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S.Ct. 1514, 1518 (2017)

("In 1897, Congress resolved the confusion by enacting a patent specific venue statute.  In so doing, it 'placed patent infringement cases in a class by themselves, outside the scope of general venue legislation.'") (internal citations omitted); *Stonite Prods. Co. v. Melvin Lloyd Co.*, 315 U.S. 561, 565–66 (1942) ("That purpose indicates that Congress did not intend the [Patent Act] to dovetail with the general provisions relating to the venue of civil suits, but rather that it alone should control venue in patent infringement proceedings."); *see also Schnell v. Peter Eckrich & Sons, Inc.*, 365 U.S. 260, 262 (1961).  Given these holdings, pendent venue has no place in patent cases.  In fact, both before the Federal Circuit expanded the scope of venue of patent cases in *VE Holding* and since the Supreme Court's decision in *TC Heartland*, which overruled *VE Holding*, courts have uniformly rejected the application of pendent venue to patent cases in favor of a strict application of the patent venue statute set forth in § 1400(b).[8]

Pre-*VE Holding*, courts refused to use pendent venue to retain patent claims that did not satisfy § 1400(b), even where venue was proper for one or more asserted patents in the same case:

- *Kalvar Corp. v. Memorex Corp.*, 386 F. Supp. 273, 278 (E.D. La. 1974) ("Proper venue in this district for the cause of action based upon infringement of the film patent does not vest this court with venue of the separate cause of action based upon infringement of the process patent where no acts of infringement have occurred within this district.");

- *Digit. Equip. Corp. v. Elec. Memories & Magnetics Corp.*, 452 F. Supp. 1262, 1266 (D. Mass. 1978) (rejecting argument that interrelationships and technological similarities of patents justified "establishment of venue as to one patent should serve to establish venue as to the others");

- *Schroeder v. Owens-Corning Fiberglas Corp.*, 326 F. Supp. 594, 595 (C.D. Cal. 1971) ("The propriety of venue in this civil action for patent infringement must be determined separately and independently with respect to the Method Patent and the Article Patent alleged to be infringed in this civil action.");

- *Dow Chem. Co. v. Metlon Corp.*, 281 F.2d 292, 294 (4th Cir. 1960) (refusing to exercise venue over one patent based on venue of a separate patent);

- *Datascope Corp. v. SMEC, Inc.*, 561 F. Supp. 787, 789 (D.N.J. 1983) (holding that plaintiff

---

[8] *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574 (Fed. Cir. 1990); *TC Heartland*, 137 S.Ct. at 1519–21.

must "establish proper venue for the '709 claim independent of the '339 claim");

- *Lyon v. Gen. Motors Corp.*, 200 F. Supp. 89, 90–91 (N.D. Ill. Nov. 7, 1961) (dismissing one patent for improper venue even though case involved eight patents all "dealing with automobile wheel covers");

- *Anderson v. Scandrett*, 19 F. Supp. 681, 685 (D. Minn. 1937) ("The court does not understand that, merely because it has jurisdiction over the alleged infringement of two of the patents, it may assume jurisdiction of a related patent.").

In refusing to expand venue beyond the patent venue statute, these courts relied on the language and purpose behind § 1400(b).  *See Kalvar*, 386 F. Supp. at 274 ("[W]e note that the language of 28 U.S.C. § 1400(b) is specific and unambiguous and the requirement of venue under this statute 'is not one of those vague principles, which, in the interest of some overriding policy, is to be given a liberal construction.'") (quoting *Schnell*, 365 U.S. at 264); *see also Hoffacker v. Bike House,* 540 F. Supp. 148, 149–50 (N.D. Cal. 1981) (refusing to apply pendent venue to patent claims finding that it would be an "evasion of the venue limitation imposed by section 1400(b) [and] a subversion of the Supreme Court's determination that this section is the exclusive provision governing patent actions"); *Digit. Equip.*, 452 F. Supp. at 1266 n.5 ("The exclusivity of Section 1400(b) is well established.") (collecting cases).

In *TC Heartland*, the Supreme Court reaffirmed its *Fourco* and *Stonite* decisions that § 1400(b) "is the sole and exclusive provision controlling venue in patent infringement actions, and . . . is not to be supplemented . . . by § 1391(c)."  137 S. Ct. at 1519 (citation omitted).  As a result, post-*TC Heartland*, courts have rejected the application of pendent venue to patent cases:

- *Shure, Inc. v. ClearOne, Inc.*, 2018 WL 3032851, at *1 (N.D. Ill. Mar. 16, 2018) ("And *TC Heartland* puts the nail in the coffin: if the general federal venue statute does not supplement the patent venue statute, then it is unclear why a non-statutory doctrine could do so.");

- *Wet Sounds, Inc. v. PowerBass USA, Inc.*, 2018 WL 1811354, at *3 (S.D. Tex. Apr. 17, 2018) (refusing to apply pendent venue in part because "the patent venue statute contains the more specific provisions");

- *Nissei ASB Co. v. R&D Tool & Eng'g Co.*, 2018 WL 9961069, at *4 (N.D. Ga. Nov. 9,

2018) ("Patent infringement actions carry special venue requirements . . . . Courts hesitate to allow parties to circumvent this specific statute.");

- *Nat'l Prod., Inc. v. Arkon Res., Inc.*, 2018 WL 1457254, at *7 (W.D. Wash. Mar. 23, 2018) (declining to exercise pendent venue because the more specific venue requirements of § 1400(b) control);

- *Cal. Expanded Metal Prods. Co. v. Klein*, 2018 WL 2041955, at *2 (C.D. Cal. Apr. 30, 2018) (specificity requirement of § 1400(b) "weighs against the application of pendent venue to cases involving patent claims");

- *Olivia Garden, Inc. v. Stance Beauty Labs, LLC*, 2018 WL 3392063, at *2 (N.D. Cal. July 12, 2018) (where patent claims served as the primary basis for venue, pendent venue does not apply);

- *Jenny Yoo Collection, Inc. v. Watters Design Inc.*, 2017 WL 4997838, *7 (S.D.N.Y. Oct. 20, 2017) (refusing to apply pendent venue over patent infringement claim post-*TC Heartland*);

- *Glob. Protection Corp. v. Arthur*, No. 1:18-cv-10966, slip op. at 1 (D. Mass. Sept. 20, 2018) ("[I]n light of the reiteration in *TC Heartland* . . ., the 'pendent venue' doctrine is inapplicable to patent infringement claims.").

These post-*TC Heartland* decisions align with decisions pre-*VE Holding* that refused to apply pendent venue in a patent case.

### c. Quartz relies on inapposite cases in its effort to use pendent venue.

Quartz asks this Court to put aside the uniform rejection of pendent venue in patent cases based on two decisions (one of which cites the other)—*Omega Patents* and *Bio-Rad*—that invoke pendent venue in a patent case.[9]  But in both of those cases, the courts relied on a *forum selection clause* to support venue as opposed to the patent venue statute itself.  For example, in *Omega Patents*, the court held that *TC Heartland* had "no effect" on the case because there, the Supreme Court only "established how venue is to be determined in these actions *in the absence of a stipulation to venue accompanied by pendent venue*."  *Omega Patents, LLC v. CalAmp Corp.*, 2017 WL 4990654, at *4 (M.D. Fla. Sept. 22, 2017) (emphasis added).[10]  Similarly, the court in

---

[9]  Morgan Decl., Ex. 5 at 2.

[10]  Notably, the court in *Omega Patents* also found that the defendant had waived venue and could not take advantage of the intervening law exception to waiver based on *TC Heartland*.  *Id.*

*Bio-Rad* held that "in the present case, . . . two of [the asserted patents] anchored venue to this district through a forum selection clause, a fact pattern essentially identical to that of *Omega Patents*." *Bio-Rad Labs., Inc. v. 10X Genomics, Inc.*, 2020 WL 2079422, at *9 (D. Mass. Apr. 30, 2020).  No other court has relied on either *Omega Patents* or *Bio-Rad* to apply pendent venue; in fact, at least one court has rejected the use of pendent venue, even in the presence of a forum selection clause.  *See, e.g.*, *Nissei*, 2018 WL 9961069 at *4 ("While the contract claim and the patent claims involve the same circumstances in this case, the policy considerations in favor of pendent venue do not override the presumption in favor of upholding specific patent-venue law for patent-infringement claims.").  Without dispute, Quartz has no forum selection clause upon which it can rely, and, thus, the narrow holdings of these cases have no application here.

At bottom, Quartz must establish venue pursuant to § 1400(b), and as Quartz recognizes through its venue allegations in the FAC, it must do so separately for each patent.  Quartz's effort to avoid that requirement under the cover of a pendent venue theory—as the cases demonstrate— runs counter to the language of the patent venue statute.  Pendent venue cannot supplement the patent venue statute, and this Court should dismiss the '215 and '275 patents for improper venue.

**B.      Quartz's direct infringement claims must be dismissed with prejudice.**

**1.      Quartz's allegations regarding direct infringement of the method claims fail.**

**a.      For the '004 patent, Quartz fails to allege "direction or control" over the riders.**

As Uber explained in its motion to dismiss the Original Complaint, direct infringement of a method claim requires all steps of the claim be performed by or attributable to a single actor. *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (en banc). The Federal Circuit explained that acts of one entity may be attributed to another entity "(1) where that entity directs or controls others' performance, and (2) where the actors form a joint enterprise."

*Id.*  For the '004 patent, Quartz relies on Uber, the Driver app, and the Rider app to allege performance of each step of method claim 1.  *See, e.g.*, FAC ¶¶ 48 (Driver/Rider app), 49 (Uber), 50 (Driver/Rider app).  As a result, to plausibly allege that Uber infringes, Quartz must allege facts that Uber directs and controls the performance of each step imputed to the Driver app and to the Rider app.  This Quartz has failed to do.  Nowhere in its allegations for the '004 patent does Quartz allege facts that suggest Uber controls the steps performed by the Rider app.  *See generally* FAC ¶¶ 45–86.  Thus, direct infringement of the method claims of the '004 patent must be dismissed.

### b.  By alleging that the "Uber Platform" performs the claimed method steps, Quartz fails to state a claim with respect to the method claims.

With respect to its claims of direct infringement of the method claims, Quartz fails to satisfy the pleading standards set out in *Iqbal* and *Twombly*[11] and therefore those claims must be dismissed.  Rather than allege that a person performs the steps of the claimed methods as the law requires, Quartz alleges that "the Uber Platform performs [the] method."  FAC ¶ 47 ('004 patent), ¶ 95 ('464 patent), ¶ 145 ('085 patent), ¶ 185 ('215 patent), ¶ 236 ('616 patent), ¶ 271 ('275 patent).  And in the allegations that follow these introductory paragraphs for each asserted method claim, Quartz consistently alleges that hardware and/or software performs the claimed steps rather than a person as the examples below demonstrate:[12]

- Paragraph 48 ('004 patent):  "the Driver app specifies an activity to be executed . . ."
- Paragraph 51 ('004 patent):  "software running on one or more servers of the Uber Platform determines whether the destination location  . . ."
- Paragraph 99 ('464 patent):  "the Driver app arranges at the vehicle device for an indication to be provided to the operator . . ."
- Paragraph 119 ('464 patent):  "Plaintiff alleges that the steps of the accused ride-hailing

---

[11]  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

[12]  In rare instances, Quartz refers to a person's action (*see, e.g.*, FAC ¶¶ 47, 146), but those few references are substantially out-numbered by Quartz's consistent reliance on the Uber Platform and its components alone performing the steps.  Indeed, in each instance, the reference is preceded and succeeded by allegations directed to the Uber Platform, Uber servers, Driver app or Rider app.

methods performed by the Driver application of the Uber Platform are performed by the mobile devices of Uber drivers . . ."

- Paragraph 147 ('085 patent):   "a server of the Uber Platform processes the position coordinates and time information provided by the Driver app and/or Rider app . . ."

- Paragraph 161 ('085 patent):   "Plaintiff alleges that the steps of the accused ride-hailing methods performed by the Driver application of the Uber Platform are performed by the mobile devices of Uber drivers . . ."

- Paragraph 219 ('215 patent):   "all steps of the claimed methods are performed by server-side software and/or network of the Uber Platform . . ."

- Paragraph 239 ('616 patent):   "the driver's mobile device that is running the Driver app (the mobile object) is operable to perform a process of providing a notification . . ."

- Paragraph 272 ('275 patent):   "the Uber Platform provides by one or more server processors an output based on processing of the passenger information . . ."

By alleging that the "Uber Platform" system and the hardware/software components of the Uber Platform perform the claimed method steps, Quartz ignores yet another rule of patent law: "To infringe a method claim, *a person* must have practiced all steps of the claimed method." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1317 (Fed. Cir. 2009) (emphasis added); *see also Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1206 (Fed. Cir. 2010); *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 850 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011) ("Direct infringement occurs only when someone performs the claimed method."); *Mirror Worlds, LLC v. Apple, Inc.*, 784 F. Supp. 2d 703, 712–13 (E.D. Tex. 2011), *aff'd*, 692 F.3d 1351 (Fed. Cir. 2012); *France Telecom S.A. v. Marvell Semiconductor Inc.*, 2014 WL 4272771, at *6 (N.D. Cal. Aug. 28, 2014) ("[T]he Federal Circuit and district courts have repeatedly held that a person must practice all steps of the claimed method to infringe a method claim.") (collecting cases).   Because it has ignored this well-established rule, Quartz has failed to properly plead infringement of the method claims, and the claims must be dismissed.[13]

---

[13]  Unlike in the FAC, in its infringement contentions, Quartz pointed to acts of the driver and rider to allege infringement of the method claims.   In doing so, Quartz raised issues of divided infringement.   *See Akamai*, 797 F.3d at 1022.   By pointing to the Uber Platform as performing the

In so pleading, Quartz has essentially tried to convert the method claims, which require actions, into system claims, and thereby allege that "use" of the system satisfies the steps of the method.  But this cannot be.  Method and systems claims are distinct statutory classes of invention. 35 U.S.C. § 101 ("Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.").  As such, courts and the Patent Office treat method and system claims differently:

- *In re Nuijten*, 500 F.3d 1346, 1355 (Fed. Cir. 2007) ("The Supreme Court and this court have consistently interpreted the statutory term 'process' to require action.") (collecting cases);

- *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1317 (Fed. Cir. 2005) ("Under section 271(a), the concept of 'use' of a patented method or process is *fundamentally different* from the use of patented system or device.") (emphasis added);

- *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005) ("The Board correctly surmised that, as a result of the combination of two separate statutory classes of invention, a manufacturer or seller of the claimed apparatus would not know from the claim whether it might also be liable for contributory infringement because a buyer or user of the apparatus later performs the claimed method of using the apparatus.");

- *Lyda v. CBS Corp.*, 838 F.3d 1331, 1339 (Fed. Cir. 2016) ("Our cases have applied joint infringement to method claims and not system claims.") (citing *Centillion Data Sys. LLC v. Quest Commc'ns Int'l Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011) ("analyzing system claims under a different framework: to use a system for purposes of infringement, a party must put the invention into service, i.e., control the system as a whole and obtain benefit from it"));

- MPEP § 2106.03 (distinguishing process claims, which "define[] 'actions'" or a "series of acts or steps," from the other three categories of claims, which "define the types of physical or tangible 'things' or 'products' deemed appropriate to patent") (collecting cases).

Demonstrative of Quartz's insensitivity to the difference between these two statutory classes of invention, Quartz not only alleges that the "Uber Platform" performs the claimed methods but also alleges that the "Uber Platform" is the alleged infringing *system*.  *See, e.g.*, FAC ¶ 59 ('004 patent),

---

steps of the claimed methods in the FAC, as opposed to the driver or rider, Quartz appears to be trying to side-step, or at least muddle, its obligation to prove that all steps are performed by or attributable to a single actor.  *See id.*

¶ 113 ('464 patent), ¶ 230 ('616 patent).  At bottom, Quartz's reliance on the "Uber Platform" as both performing the method *and* being the system is fatal to these claims.  Quartz has failed to state a claim for direct infringement of the method claims, and these claims should be dismissed.

### 2.  Quartz's allegations regarding direct infringement of the system claims fail.

#### a.  Quartz's allegations of the *use* of the system claims for the '004 and '464 patents conflict with the law and must be dismissed.

For the system claims of the '004 and '464 patents, Quartz asserts that the alleged infringing system is comprised generally of the "Uber Platform" (*see* FAC ¶¶ 60–62, 113, 117), and more specifically of (1) the Uber servers (*see* FAC ¶¶ 62–64, 116), (2) the Driver app (*see* FAC ¶¶ 24, 26, 60–62, 64, 118), and (3) the Rider app (*see* FAC ¶¶ 24, 26, 62, 113–115).  In *Centillion*, the Federal Circuit held that "'use' of a system claim 'requires a party . . . to use each and every element of a claimed [system].'  In order to 'put the system into service,' the end user must be using all portions of the claimed invention."  *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011).  Here, Quartz has not alleged that a party puts "each and every element" of the system into *use*, and these claims must be dismissed.

Quartz includes the Rider app as part of the accused system in its '004 patent allegations: "The Rider app similarly provides location data of a passenger's mobile computing device (if enabled by the rider)."  FAC ¶ 62; *see also id.* ¶ 24 ("[T]he Uber Rider . . . application[], installed and used on mobile computing devices (most often wireless mobile phones), collect[s] a passenger's current location . . . .").  In its direct infringement of the '004 patent system claims, Quartz alleges that "Uber *drivers* have and continue to *use* the *subject matter* of [the] asserted system claims."  *See* FAC ¶ 77 (emphasis added).  In that same paragraph, Quartz further alleges that the "*drivers* control each use of the Uber Platform by using the *Driver app* to go online . . . and by accepting particular *ride requests* . . . ."  *Id.* (emphasis added).  In other words, Quartz

alleges that the *driver* uses the system claims of the '004 patent "by placing the Uber Platform into action or service." *Id.*

But this allegation ignores the fact that the system Quartz has defined and accused of infringement includes the Rider app (FAC ¶ 62); in overlooking this definition, Quartz fails to allege that the driver puts the Rider app into action or service. Indeed, while the driver may use the Driver app, which may put into service the Driver app and the Uber servers, nowhere does Quartz explain how the driver uses or puts into service the *Rider app*.

Likewise, with respect to the '464 patent, Quartz asserts that the alleged infringing "system includes a Driver app running on a driver's mobile device." FAC ¶ 118. But with respect to direct infringement of the system claim, Quartz merely alleges that "*passengers* have and continue to *use* the *subject matter* of system claim 20 . . . by placing the Uber Platform into action or service . . . ." *See* FAC ¶ 127 (emphasis added). Quartz continues that "*passengers* control each use of the Uber Platform in relation to claim 20 by using the *Rider app* to request a ride . . . ." *Id.* (emphasis added). Here again, Quartz ignores that it defined the alleged infringing system to include not only the Rider app but also the Driver app. While the rider may use the Rider app, which may put into service the Rider app and Uber servers, Quartz has not alleged how the *rider* uses or puts into service the *Driver app*.

Thus, for both the '004 and '464 patents, Quartz has failed to plead that any one "end user" places "*all portions* of the claimed system" into use. *See Centillion*, 631 F.3d at 1284 (emphasis added). The allegations for use of the '004 and '464 patent system claims must be dismissed.[14]

> **b. Quartz's allegations of the *making* of the system claims for the '004 and '464 patents also conflict with the law and must be dismissed.**

---

[14] Uber is not challenging Quartz's allegations of the system claims for the '616 patent (claims 1–5). However, to the extent the Court dismisses the method claims, venue is improper in this District because Uber's servers are not located in this District. Decl. of Jeff Rapipong ¶ 2.

In *Centillion*, the Federal Circuit held that a supplier did not make the system where it did not combine all of the claim elements of the alleged infringing system:  "Qwest would need to combine all of the claim elements—this it does not do.  The customer, not Qwest, completes the system by providing the 'personal computer data processing means' and installing the client software."  *Centillion*, 631 F.3d at 1288.  For the '004 and '464 patents, Quartz similarly fails to identify who combines all of the elements of the system Quartz alleges infringes.

Starting with the '004 patent, Quartz alleges that the "making of the claimed systems is completed when a *driver* performs the final assembly step of downloading the Driver app to the driver's mobile device."  FAC ¶ 76 (emphasis added).  But as explained above, Quartz alleges that the system includes Uber servers, the Driver app, *and the Rider app*.  *See, e.g.*, FAC ¶ 62.  In its "making" allegation, Quartz completely ignores the Rider app component of the system; Quartz does not explain how the driver combines the Rider app with the rest of the alleged system.  Indeed, the driver does not supply the rider's mobile device nor does the driver install the Rider app on the rider's mobile device.  Quartz therefore fails to allege that the driver "combine[s] all of the claim elements."  *Centillion*, 631 F.3d at 1288.  Thus, the direct infringement claims for making the system of the '004 patent must be dismissed.

For the '464 patent, Quartz alleges that "*drivers* and *passengers* are engaged in direct infringing activities of system claim 20 by making and having made such system."  FAC ¶ 126 (emphasis added).  Quartz further alleges that "the making of the claimed system is completed when a *driver* performs the final assembly step of *downloading the Driver app* to the driver's mobile device and a *passenger downloads the Rider app* to the passenger's mobile device."  *See id.*  Here, Quartz explicitly relies on both the driver and rider to "make" the system, but it also explicitly ignores the requirement that one party needs to "combine all the claim elements."  *See*

*Centillion*, 631 F.3d at 1288.  While the driver may provide a mobile device and install the Driver app, the driver does not combine it with the Rider app and the so-called Uber Platform.  Likewise, the rider has nothing to do with the Driver app; while he or she may install the Rider app and, through a mobile device, connect the Rider app to Uber's servers, the rider does not combine the Driver app with the so-called Uber Platform.  Quartz has failed to allege, and cannot allege, a claim for making the system claim of the '464 patent, and this claim must be dismissed.

**C.**      **All of Quartz's induced infringement claims must be dismissed with prejudice.**

      **1.**      **Quartz relies on overruled law.**

The FAC fails to correct the deficient claims of induced infringement alleged in the Original Complaint.  In the FAC, Quartz alleges that Uber induces infringement of all claims of the '004, '464, '616 and '085 patents; the '004, '464 and '616 patents contain both system and method claims, while the '085 patent includes only method claims.  But, as with the Original Complaint, Quartz fails to identify a third party who alone directly infringes, *i.e.*, satisfies each element of each asserted claim, as required by the law.  *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1332 (Fed. Cir. 2016) (induced infringement requires plaintiff to prove "a third party directly infringed"); *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1351 (Fed. Cir. 2001) ("Inducement only occurs if the party being induced directly infringes the patent.").  Instead, and contrary to the law, Quartz appears to allege, among other things, that Uber is liable for induced infringement because Uber induces the driver to perform *some* of the method steps (short of directly infringing), the performance of which Quartz attributes to Uber in support of its direct infringement claims.

During the parties' meet and confer, Uber confronted Quartz with the legal requirements of inducement; Quartz responded by asserting "that an inducer can be found liable where that

entity is also a *part* of the direct infringement."[15]  In other words, it appears Quartz contends that inducement can occur when the induced party does not directly infringe.  In so asserting, Quartz relies on an early *Akamai* decision—*Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1309 (Fed. Cir. 2012)—that has since been reversed.  Indeed, the Supreme Court squarely rejected the Federal Circuit's holding in the *Akamai* decision quoted by Quartz, stating that "[t]he Federal Circuit's analysis fundamentally misunderstands what it means to infringe a method patent."  *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 921 (2014).  The Court continued that there had been no infringement of the method "because performance *of all the patent's steps* is not attributable to any one person."  *Id.* at 922 (emphasis added).  The Court further held that "[i]f a defendant can be held liable under § 271(b) for inducing conduct that does not constitute infringement," § 271(b) would be deprived of "ascertainable standards."  *Id.*  Thus, Uber cannot be liable for inducement based on the driver's performance of some of the steps as Quartz alleges—the driver must have performed *all* of the steps to directly infringe.

### 2.  All of Quartz's induced infringement claims fail to identify a third party direct infringer who alone infringes all elements.

Because Quartz fails to identify a third party direct infringer who alone satisfies every element of each asserted claim, the induced infringement claims fail as a matter of law.  Starting with the '004 patent, Quartz alleges that Uber "has and continues to induce [1] drivers' direct infringing use of such system and computer program product claims, [2] to practice the claimed methods, and [3] to induce the infringing steps of the method performed by the drivers."  *See* FAC ¶ 78.  Taking each of these three allegations in turn, it is clear that Quartz's induced infringement claims fail.  First, as explained above, because Quartz relies on both the Driver and Rider apps, Quartz has failed to allege a proper claim that the driver uses *each and every element* of the claimed

---

[15]  Morgan Decl., Ex. 3 at 4–6; *id.*, Ex. 5 at 7–8.

system, *i.e.*, the driver alone does not directly infringe.  Second, nowhere does Quartz allege that the Driver app practices *every element* of the claimed methods; as also explained above, the FAC relies on the Rider app to allege performance of each of the claimed steps.  And third, as further explained above, there is no such thing as inducing infringement of *some* of the steps—there must be direct infringement, *i.e.*, all steps must be performed.  Having failed to plausibly allege that the driver directly infringes the method/system claims, the inducement allegations must be dismissed.

Quartz's allegations for induced infringement of the '464, '085, and '616 patents are similarly deficient:

- For the '464 patent, Quartz switches from the driver to the rider and alleges that Uber "has and continues to induce *passengers*' direct infringing use of such system, to practice steps of the claimed methods, and to induce performance of the steps of the claimed methods performed on mobile devices of drivers and riders."  *See* FAC ¶ 128.  As with its allegations that Uber induces the driver to infringe the '004 patent, Quartz has failed to allege that the passenger alone performs every element of the asserted claims.

- For the '085 patent, which includes only method claims, Quartz alleges that "Uber induce[s] performance of the steps of the claimed methods performed on mobile devices of *drivers* and *riders*."  FAC ¶ 168 (emphasis added).  To the extent this allegation asserts that Uber induces the drivers and riders individually to infringe, neither the driver nor the rider alone performs every element of the asserted method claims.  Instead, Quartz alleged a combination of Uber, the Driver app, and the Rider app to make out its claim of infringement.  *See* FAC ¶¶ 145–48.  And to the extent this allegation is directed to a "partial" inducement, as explained above, the Supreme Court rejected any such theory.

- For the '616 patent, Quartz alleges that Uber "has and continues to induce *drivers'* direct infringing use of such system and computer program product claims, to practice steps of the claimed methods, and to induce performance of the steps of the claimed methods performed on mobile devices of the *drivers*."  FAC ¶ 253.  Here, at least with respect to the system claims, the driver does not put the entire system into use (or any part of the system).  Rather, given the language of the system claims, which focuses exclusively on servers—"mobile object server" and "registration server"—only Uber can be said to "use the system."  *Id.* ¶¶ 230–34.  As such, the driver cannot be alleged to be a direct infringer and hence there is no inducement of the driver with respect to the system claims.  For the method claims, given that Quartz alleges that the Driver app performs a claimed method step (*Id.* ¶ 239), Uber cannot induce the drivers.[16]

---

[16]  That Quartz pleads induced infringement "in the alternative" for the '004 and '616 patents makes no difference.  In either case, the driver alone does not directly infringe.

Quartz has failed to allege a claim for induced infringement and all of the induced infringement claims must be dismissed.

**D.     Quartz's new boilerplate testing-based allegations must be dismissed.**

For each Asserted Patent, Quartz alleges, in boilerplate fashion with no supporting facts, that Uber infringes through its "development, testing, and/or demonstration." FAC ¶¶ 71, 76–77, 119, 126–127, 161, 219, 245, 252, 280, 282. These allegations did not appear in the Original Complaint nor does it appear in Quartz's infringement contentions. As this Court has held, because the FAC is "completely silent on how [Uber] could have directly infringed [the asserted claims] during testing, [it] d[oes] not even rise to the level of containing 'labels and conclusions, and a formulaic recitation of the elements of a cause of action' that [is] sufficient under *Twombly*." *De la Vega*, 2020 WL 3528411, at *4–5. Moreover, with respect to method claims, "general development alone is insufficient to prove that [a defendant] performed the claimed steps." *Mirror Worlds*, 784 F. Supp. 2d at 713. Respectfully, Quartz's allegations based on development, testing, and demonstration should be dismissed.

## IV.     CONCLUSION

For the foregoing reasons, Uber respectfully requests that the Court grant its motion to dismiss and enter the attached proposed order. Despite having the time it requested to prepare the FAC (*see* Hr'g Tr. at 39:14–40:2), Quartz has failed to plead legally cognizable theories and allegations. As a result, the Court should dismiss the '215 and '275 patents from this case and dismiss with prejudice the asserted method claims, the asserted system claims for the '004 and '464 patents, and all induced infringement claims.

Dated:  October 2, 2020                    Respectfully submitted,

                                           */s/ Mark N. Reiter*
                                           Mark N. Reiter (#16759900)
                                           mreiter@gibsondunn.com
                                           Tracey B. Davies (#24001858)
                                           tdavies@gibsondunn.com
                                           Robert Vincent (#24056474)
                                           rvincent@gibsondunn.com
                                           Ashbey N. Morgan (#24106339)
                                           anmorgan@gibsondunn.com
                                           Audrey Yang (#24118593)
                                           ayang@gibsondunn.com
                                           **GIBSON, DUNN & CRUTCHER LLP**
                                           2001 Ross Avenue, Suite 2100
                                           Dallas, TX 75201-6912
                                           Telephone: (214) 698-3100


                                           */s/ Melissa R. Smith*
                                           Melissa R. Smith (#24001351)
                                           melissa@gilliamsmithlaw.com
                                           **GILLIAM & SMITH, LLP**
                                           303 South Washington Avenue
                                           Marshall, Texas 75670
                                           Telephone:  903.934.8450
                                           Facsimile:  903.934.9257


                                           *Attorneys for Defendant Uber Technologies, Inc.*

21

## CERTIFICATE OF SERVICE

I hereby certify that on October 2, 2020, the foregoing was filed electronically in compliance with Local Rule CV-5(b)(1) and served via the Court's electronic filing system on all counsel who have consented to electronic service on this 2nd day of October, 2020.

*/s/ Mark N. Reiter*
Mark N. Reiter