**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| QUARTZ AUTO TECHNOLOGIES LLC, | |
| Plaintiff | Civil Action No. 1:20-cv-00720 |
| v. | The Honorable Alan D. Albright |
| UBER TECHNOLOGIES, INC., | |
| Defendant. | |

**QUARTZ'S OPPOSITION TO UBER'S RENEWED MOTION TO DISMISS**

**TABLE OF CONTENTS**

**Page**

I.      Overview Of Quartz's First Amended Complaint ................................................................ 2

II.     Quartz Adequately Pleads Direct Infringement Of The '004 Patent Method Claims ........ 5

III.    Quartz's Infringement Allegations Properly Accuse Uber Of Performing The Claimed
        Method Steps ..................................................................................................................... 6

IV.     Quartz Properly Alleges "Use" And "Making" Of The Asserted '004 System Claims ... 10

V.      Quartz Properly Alleges "Use" And "Making" Of The Asserted '464 System Claims ... 12

VI.     Venue Is Proper As To Each Cause Of Action ................................................................ 13

VII.    Quartz's Inducement Theories As To Methods Claims .................................................... 16

VIII.   Quartz Properly Pleads Infringement Based On Uber's Development, Testing, And/Or
        Demonstration ................................................................................................................. 17

IX.     Conclusion ....................................................................................................................... 18

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Bio-Rad Laboratories, Inc. v. 10X Genomics, Inc.*,
2020 WL 2079422 (D. Mass. Apr. 30, 2020) ........................................................... 15

*Blackbird Tech LLC v. Cloudflare, Inc.*,
2017 WL 4543783 (D. Del. Oct. 11, 2017)............................................................... 13

*Cal. Expanded Metal Prods. Co. v. Klein*,
2018 WL 2041955 (C.D. Cal. Apr. 30, 2018)........................................................... 14

*Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*,
631 F.3d 1279 (Fed. Cir. 2011) ....................................................................... 11, 13

*De la Vega v. Microsoft Corp.*,
Case No. 6:19-cv-612, ECF No. 29 (W.D. Tex. Feb. 11, 2020)............................. 18

*Embrex, Inc. v. Serv. Eng'g Corp.*,
216 F.3d 1343 (Fed. Cir. 2000)................................................................................ 18

*Ericsson, Inc. v. D-Link Sys. Inc.*,
773 F.3d 1201 (Fed. Cir. 2014) .................................................................................. 7

*Finjan, Inc. v. Secure Computing Corp.*,
626 F.3d 1197 (Fed. Cir. 2010) .................................................................................. 7

*France Telecom S.A. v. Marvell Semiconductor Inc.*,
12-CV-04967-WHO, 2014 WL 4272771 (N.D. Cal. Aug. 28, 2014)........................ 8

*Glob. Protection Corp. v. Arthur*,
No. 1:18-cv-10966, slip op. (D. Mass. Sept. 20, 2018) ........................................... 14

*i4i Ltd. P'ship v. Microsoft Corp.*,
598 F.3d 831 (Fed. Cir. 2010), aff'd, 564 U.S. 91 (2011) ........................................ 8

*In re Nuijten*,
500 F.3d 1346 (Fed. Cir. 2007) .................................................................................. 9

*IPXL Holdings, LLC v. Amazon.com, Inc.*,
430 F.3d 1377 (Fed. Cir. 2005) .................................................................................. 9

*Jenny Yoo Collection, Inc. v. Watters Design Inc.*,
2017 WL 4997838 (S.D.N.Y. Oct. 20, 2017) ......................................................... 14

*Joy Techs., Inc. v. Flakt, Inc.*,
6 F.3d 770 (Fed. Cir. 1993)........................................................................................ 7

*Laitram Corp. v. Rexnord Inc.*,
939 F.2d 1533 (Fed. Cir. 1991).................................................................................. 4

*Limelight Networks, Inc. v. Akami Techs., Inc.*,
572 U.S. 915 (2014) ................................................................................................. 16

*Lucent Techs., Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009) .............................................................................. 7, 8

*Lyda v. CBS Corp.*,
838 F.3d 1331 (Fed. Cir. 2016).................................................................................. 9

*Mirror Worlds, LLC v. Apple, Inc.*,
784 F. Supp. 2d 703 (E.D. Tex. 2011), aff'd, 692 F.3d 1351 (Fed. Cir. 2012) ........ 8

*Nat'l Prods., Inc. v. Arkon Res., Inc.*,
2018 WL 1457254 (W.D. Wash. Mar. 23, 2018)..................................................... 14

*Nissei ASB Co. v. R&D Tool & Eng'g Co.*,
 2018 WL 9961069 (N.D. Ga. Nov. 9, 2018)............................................................ 14, 15, 16
*NTP, Inc. v. Res. in Mot., Ltd.*,
 418 F.3d 1282 (Fed. Cir. 2005)....................................................................................... 9
*Olivia Garden, Inc. v. Stance Beauty Labs, LLC*,
 2018 WL 3392063 (N.D. Cal. July 12, 2018) ............................................................... 15
*Omega Patents LLC v. Calamp Corp.*,
 2017 WL 4990654 (M.D. Fla. 2017) .............................................................................. 15
*Seven Networks LLC v. Google LLC*,
 315 F. Supp. 3d 933 (E.D. Tex. 2018) ........................................................................... 13
*Shure, Inc. v. ClearOne, Inc.*,
 2018 WL 3032851 (N.D. Ill. Mar. 16, 2018) ................................................................ 15
*SiRF Tech., Inc. v. ITC*,
 601 F.3d 1319 (Fed. Cir. 2010)......................................................................................... 7
*Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*,
 329 F. Supp. 3d 1070 (N.D. Cal. 2018) ......................................................................... 18
*Wet Sounds, Inc. v. PowerBass USA, Inc.*,
 2018 WL 1811354 (S.D. Tex. Apr. 17, 2018) ............................................................... 14

**Statutes**
28 U.S.C. § 1400(b) ................................................................................... 13, 14, 15, 16
35 U.S.C. § 271........................................................................................................ 3, 7, 11

Uber's initial motion to dismiss was based upon purported ambiguities in Quartz's allegations—Uber complained it could not tell who or what Quartz accused of infringing. In direct response, Quartz's First Amended Complaint ("FAC") provides Uber with the requested detail on a claim-by-claim and limitation-by-limitation basis. The FAC identifies the component of Uber's platform that practices each claim step or supplies each structural claim element, alleges how the accused component corresponds to the claim, and sets forth additional facts in support. There is no question that the FAC provides sufficient notice under the applicable case law.

According to Uber's renewed motion, the FAC supposedly accuses three components—"Uber, the rider, and the driver"—of providing the steps or components of each asserted claim without alleging that Uber directs and controls all three components. As shown herein, this is simply not the case. The FAC describes that Uber provides its services through a platform having three main parts—Uber servers; Uber's Driver app; and Uber's Rider app. However, the specific claim-by-claim infringement allegations of nearly all claims are directed to steps or components supplied by fewer than all three parts. The FAC makes this clear by identifying which specific part corresponds to each claim step or component and whether Uber supplies the step or component as a single actor or by directing and controlling the drivers or riders. Because Uber's argument is based upon a fundamental mischaracterization of the FAC, it must be rejected.

Finding no basis on which to challenge the sufficiency of the infringement pleadings as to the '215 and '275 patents, which are directed to steps/components supplied only by Uber's servers, Uber argues improper venue as to those patents because certain of its servers are not in Texas. However, the FAC pleads sufficient facts upon which to apply the doctrine of pendent venue to these patents. Uber fails to cite any controlling case law, and there is none known to Quartz, holding that pendent venue cannot apply here. Uber's partial venue challenge should be rejected.

Uber makes a handful of other related arguments in its attempts to dispose of various parts of the FAC, such as asserting that all method claims must be dismissed since a "person" does not perform the steps, or that the entirety of Quartz's inducement claims must be dismissed. However, none of these arguments merit the requested wholesale dismissal of Quartz's claims. As explained more fully herein, Uber's renewed motion to dismiss lacks merit, and should be denied.

## I.    Overview Of Quartz's First Amended Complaint

In the FAC (ECF No. 46), Quartz addressed each issue raised by Uber's initial motion to dismiss, and the FAC now provides details beyond that required by the relevant pleading standards. A guided tour through the FAC demonstrates the thorough nature of Quartz's allegations, and how they can lead to no conclusion other than that Quartz has plausibly alleged infringement.

The FAC begins with standard identification of the parties, jurisdiction, and venue allegations. (FAC ¶¶ 1–14.) In response to Uber's concerns about the sufficiency of Quartz's initial venue allegations, Quartz fleshed out the factual and legal support for venue on a patent-by-patent basis. (*Id.* ¶¶ 8–14; *see also id.* ¶¶ 5–7 (personal jurisdiction allegations further supporting the venue allegations that directly follow).) The FAC next provides an overview of the asserted patents, and Quartz's ownership thereof. (*Id.* ¶¶ 15–35.)

Paragraphs 36–38 provide a high-level description of Uber's business model and technology platform. As a matter of linguistic efficiency, this section introduces the phrase "Uber Platform" as a shorthand reference to the hardware, applications, and functionalities that Uber has implemented to provide its ride-hailing services. Uber obsesses over this description, latching on to it to incorrectly argue that Quartz alleges that all three components are required to satisfy every asserted claim. The actual detailed allegations of the FAC dispel this myth. This "definition" merely provides context about Uber's highly integrated technology platform that involves its

servers, an Uber Rider app, and an Uber Driver app used by the various participants of its services. Uber ignores that the FAC specifically alleges which particular part(s) of the platform correspond to each step/component of each asserted claim, and which particular participant invokes each step/component to infringe. This is done on a claim-by-claim and limitation-by-limitation basis, beginning at paragraph 39. Count I, which addresses infringement of the '004 patent, is illustrative of Quartz's approach and is summarized below as representative of the remaining allegations.

The count begins with a few paragraphs (¶¶ 39–44) introducing the infringement allegations. Paragraph 45 begins the direct infringement allegations, laying out the asserted claims,[1] and referencing the applicable § 271(a).

Paragraph 46 presents the text of the first asserted claim—method claim 1. Paragraph 47 addresses the claim preamble, providing an overview of how Uber provides "[a] method of implementing a proximity driven activity." The ensuing paragraphs then address each claim limitation, and, in the very first sentence of each paragraph, identify which part of the Uber Platform performs the relevant act, as shown in emphasis in the table below:

| Claim Language | FAC Allegation |
| --- | --- |
| *specifying* an activity to be executed at an indeterminate destination location; | "On information and belief, ***the Driver app specifies*** an activity to be executed at an indeterminate destination location." (¶ 48.) |
| *storing* an executable software code corresponding to the activity; | "On information and belief, ***one or more servers of the Uber Platform device stores*** an executable software code corresponding to the activity of matching drivers to riders and coordinating the picking up of riders." (¶ 49.) |
| *determining* a current location of a mobile computing device; | "On information and belief, ***the Driver app periodically determines*** a current location of a mobile computing device, utilizing GPS or other sensor data generated on the mobile device." (¶ 50.) |
| *determining* whether the destination location is within a | On information and belief, ***software running on one or more servers of the Uber Platform determines*** whether |

---

[1] Pursuant to the Scheduling Order, Quartz recently reduced its asserted claims down to 50 overall, such that the FAC alleges infringement of some claims that have subsequently been dropped.

| *predefined proximity range from the current location of the mobile computing device;* | the destination location, i.e., the location of the passenger requesting a ride, is within a predefined proximity range of the current location of a driver's mobile computing device. (¶ 51.) |
|---|---|
| ***executing*** *the executable software code at a time when the destination location is within the proximity range of the mobile computing device; and* | "On information and belief, ***one or more servers of the Uber Platform executes*** the executable software code at a time when the destination location is within the proximity range of the mobile computing device." (¶ 52.) |
| ***transmitting*** *an address of the destination location to the mobile computing device.* | "On information and belief, ***a server of the Uber Platform transmits*** an address of the destination location to the mobile computing device of the driver once the driver accepts the ride request." (¶ 53.) |

The paragraphs allege detailed facts supporting the infringement read, together with additional context about how the accused steps function as part of an integrated process. For instance, with respect to the "specifying an activity" limitation of claim 1, after alleging that a driver uses the Driver app to specify the activity to be executed (picking up riders), Paragraph 48 further alleges that the activity is at an indeterminate location, i.e., a location unknown to the driver because the driver does not know where the rider is. Despite Uber's attempt to confuse matters, this plainly does not allege that claim 1 recites any step performed by the rider or the Rider app. (S*ee* ECF No. 50 at 11.) For good reason. It is fundamental that establishing infringement requires only that "every limitation ***set forth in a patent claim***" is found in an accused product or process. *Laitram Corp. v. Rexnord Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991) (emphasis added). While claim 1 refers to "an indeterminate destination location" and "the destination location," it does not recite an affirmative step of ***determining*** the destination location. Thus, although the Rider app is involved in determining the destination location, this does not correspond to any recited claim step and accordingly there are no allegations that any recited step is performed by the Rider app.

After the limitation-by-limitation mapping (FAC ¶¶ 46–70), the FAC then identifies for the asserted method claims whether Quartz alleges direct infringement by Uber alone and/or direct

infringement under a joint infringement theory. For the '004 patent, Quartz alleges that Uber directly infringes as a single actor since each recited step is performed either by an Uber server or by the Driver app on a driver's mobile phone, who are alleged to be Uber employees. (*Id.* ¶ 71.) The FAC pleads alternatively that, if the drivers are instead independent contractors, Uber nevertheless infringes under a joint infringement theory and provides detailed facts regarding how Uber directs and controls the drivers' actions such that the actions are attributable to Uber. (*Id.* ¶¶ 72–75.) For the asserted system claims, Quartz similarly identifies the acts (e.g., making and/or using) that constitute infringement and alleges that Uber is liable because its employee drivers perform those acts. (*Id.* ¶¶ 76–77.)

The FAC also identifies the claims for which Uber is accused of inducing infringement along with specific factual support. (*Id.* ¶¶ 78–84.) For the '004 patent, the FAC pleads induced infringement alternatively in case Uber drivers are found not to be Uber's employees. (*Id.* ¶ 78.)

Each Count ends with allegations regarding the damage that Quartz has and will continue to suffer from Uber's on-going infringement. (*Id.* ¶¶ 85–86.)

The FAC utilizes essentially the same approach for each remaining count and concludes with a prayer for relief. This more specific identification of infringement theories, accused actors, and supporting facts, is exactly what Uber requested in its first motion to dismiss.

## II.   Quartz Adequately Pleads Direct Infringement Of The '004 Patent Method Claims

Uber imprecisely alleges that Quartz failed to adequately plead direction and control such that Quartz's "direct infringement of the method claims of the '004 patent must be dismissed." (ECF No. 50 at 11.) As explained above, Quartz pleads direct infringement of the '004 method claims under two theories: direct infringement by Uber alone, since its drivers are Uber employees; and direct infringement under a joint infringement theory, in the event that its drivers are

determined not to be Uber employees. Uber has provided no basis to dismiss Quartz's theory of direct infringement that is based upon the actions of Uber alone, and as such, the direct infringement of the method claims cannot be dismissed in their entirety, as Uber suggests.

Second, the basis for Uber's argument that Quartz has not adequately pled direction and control stems from its mischaracterization of Quartz's allegations as relying on Uber servers, the Driver app, and the Rider app to perform the steps of claim 1. (ECF No. 50 at 11.) But as explained above, the FAC does not allege that the Rider app performs any recited step of claim 1; the FAC alleges that two steps are performed by the Driver app running on the driver's mobile phone, while four steps are performed on Uber's server(s). There are no allegations that the Rider app performs any steps of the claim, and thus no need to allege in paragraphs 71–75 (the direct infringement allegations of the '004 method claims) that Uber directs and controls the Rider app.

Quartz more than sufficiently pleads (in the alternative to its allegation that Uber drivers are employees such that each step is directly infringed by Uber itself (FAC ¶ 71)) that Uber and its drivers jointly infringe. In those joint infringement assertions, the FAC provides detailed factual allegations about how Uber directs and controls its drivers such that the drivers' actions are attributable to Uber under principles of joint infringement. (*Id.* ¶¶ 72–75.) Notably, Uber makes no attempt to claim that Quartz has not adequately pled that Uber directs and controls its drivers, effectively conceding that Quartz has met its pleading burden for these claims.

### III. Quartz's Infringement Allegations Properly Accuse Uber Of Performing The Claimed Method Steps

Uber attempts to wipe out Quartz's assertions of direct infringement of method claims in all the asserted patents with the curious argument that a "person" must perform the claimed steps. (ECF No. 50 at 11–12.) In other words, Uber believes that only the physical, manual acts of a human can infringe a method claim. Uber supports this theory with snippets of cases taken out of

context. If the law were as Uber represents, no patent to a computer implemented method, or to any method performed by a machine, could ever be infringed. But § 271 is not so limited. *See, e.g.*, *Ericsson, Inc. v. D-Link Sys. Inc.*, 773 F.3d 1201, 1220 (Fed. Cir. 2014) (upholding jury's infringement verdict where some steps of the claimed method were executed by a satellite under the defendant's control, while other steps were automatically performed by the accused GPS products, which were in possession of end users); *SiRF Tech., Inc. v. ITC*, 601 F.3d 1319, 1330–31 (Fed. Cir. 2010) ) (affirming finding of direct infringement of method claims where the accused devices and software dictated performance of the recited claim steps, and once enabled, the chip and software automatically performed the disputed steps).

Uber manufactures its purported "well-established rule" of patent law by pulling single-sentence sound bites from five cases. Uber first mentions the Federal Circuit's statement in *Lucent* that "To infringe a method claim, a person must have practiced all steps of the claimed method." (ECF No. 50 at 12 (quoting *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1317 (Fed. Cir. 2009)). But when read in context, it is clear that the statement (which is in turn quoting from *Joy Technologies*) stands for the proposition that method claims cannot be "sold" or "offered for sale," but rather must be practiced in order to find direct infringement under § 271. *Lucent*, 580 F.3d at 1309–11 ("Microsoft's ***sales*** of its software alone cannot infringe the [method] patent . . ." (emphasis added)); *see also Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed. Cir. 1993) ("the sale of equipment to perform a process is not a sale of the process within the meaning of section 271(a) ."). Uber's other sound bites are similar. The cases, read in context, confirm that method claims are directly infringed only by actual performance of their recited steps in the United States:

- *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1206 (Fed. Cir. 2010) (finding no infringement where the only evidence of a method being performed was in Germany—which is not "within the United States" as required by § 271);

- *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 850 (Fed. Cir. 2010), aff'd, 564 U.S. 91 (2011) ("Because the claims asserted by i4i are method claims, Microsoft's **sale** of Word, without more, did not infringe the '449 patent" and also finding infringement verdict supported by evidence that Word's XML editor met all limitations of the method claims.) (emphasis added);

- *Mirror Worlds, LLC v. Apple, Inc.*, 784 F. Supp. 2d 703, 713, 715 (E.D. Tex. 2011), aff'd, 692 F.3d 1351 (Fed. Cir. 2012) ("Mirror Worlds' reliance on Apple's sales of computers that contain the accused Mac OS X 10.4–6 software does not prove direct infringement. *The law is clear that the sale or offer for sale is insufficient to prove direct infringement of a method claim*." And noting the lack of evidence that Apple's employees had performed the claimed methods steps using the accused software products) (emphasis added); and

- *France Telecom S.A. v. Marvell Semiconductor Inc.*, 12-CV-04967-WHO, 2014 WL 4272771, at *6 (N.D. Cal. Aug. 28, 2014) (citing several cases supporting the proposition that a sale or offer for sale is insufficient to prove direct infringement of a method claim).

These cases do not stand for the proposition that a "person" can only practice the steps of a claimed method through his/her own physical acts. Instead, a person can perform a method by using machinery, computers, software, etc. designed to practice the method. The facts of the cases affirmatively disprove Uber's strained interpretation. As but one example, in *Lucent*, the claims recited steps to be performed by a computer—not a person—and the court upheld the jury's infringement verdict. 580 F.3d at 1310–11 (reproducing claim 19: "[a] method for use in a computer . . ." and requiring steps that are configured to be performed on the computer). Although a person may have invoked a computer to execute the method steps, this is no different from an Uber driver going online in the Driver app and causing the app on his/her mobile device to execute performance of selected method steps. (*See, e.g.*, FAC ¶ 48 (". . . when a driver goes online and indicates via the Driver app that s/he is available to fulfill ride requests ('an activity to be executed'), the Uber dispatch system, implemented on Uber's server system, begins matching ride

requests.").) Contrary to Uber's assertions, a person uses a claimed method by using hardware and/or software that perform the various steps of the method, and Quartz's allegations are proper.[2]

Uber also complains that Quartz tries to "convert" its method claims into system claims by alleging that the methods are performed by computer hardware and software, citing a handful of inapplicable cases and an MPEP section about statutory classes of inventions. (ECF No. 50 at 13.) The FAC recognizes the distinction between system and method claims by providing separate and specific claim-by-claim and limitation-by-limitation allegations for each. Uber acknowledges as much in its motion. (*Id.* at 4 (Quartz "separately addresses the method and system/computer program claims.") The cases that Uber cites are simply inapplicable here:

- *In re Nuijten*, 500 F.3d 1346, 1353 (Fed. Cir. 2007) (questioning whether "a transitory, propagating signal is within any of the four statutory categories" and holding that such transitory electrical signals are not patent eligible under § 101);

- *NTP, Inc. v. Res. in Mot., Ltd.*, 418 F.3d 1282, 1313–18 (Fed. Cir. 2005) (distinguishing method claims and system claims in addressing direct infringement and extraterritorial performance of method steps);

- *IPXL Holdings, LLC v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005) (addressing a system claim including a method step limitation and questioning "[w]hether a single claim covering both an apparatus and a method of use of that apparatus is invalid [as indefinite]"); and

- *Lyda v. CBS Corp.*, 838 F.3d 1331, 1339 (Fed. Cir. 2016) (recognizing that joint infringement theories are inapplicable to system claims and analyzing the manner in which the patent owner drafted its system claims).

Nothing in these cases even remotely suggests that pleading use of a method performed by computers, software, or other equipment somehow "converts" a method claim into a system claim.

---

[2] Uber also complains about Quartz's preliminary infringement contentions as allegedly further confusing Uber or somehow showing an attempt by Quartz to avoid its pleading obligations. (ECF No. 50 at 12 n.13; *id.* at 5.) This complaint is without merit. Moreover, Quartz's contentions are not at issue in this motion, nor can they be a part of the Court's consideration of Uber's complaints about the sufficiency of the FAC.

Moreover, it is Uber who has attempted to blur the conventional distinction between system and method claims in this case, affirmatively arguing in its original motion that Quartz's system claims should be treated as method claims. (ECF No. 12 at 9.) In view of that assertion, the FAC addresses alternative theories in the event that the Court finds it proper to interpret the asserted method claims as system claims, or vice versa.[3] (*See, e.g.*, FAC ¶ 71.) Thus, Quartz's allegations address both situations, and its reliance on hardware or software to perform steps of a computer-implemented method are entirely proper. As such, Uber's across-the-board challenge to Quartz's allegations directed to direct infringement of its method claims must be denied.

## IV.    Quartz Properly Alleges "Use" And "Making" Of The Asserted '004 System Claims

Uber also mischaracterizes Quartz's allegations under the '004 system claims as always involving Uber servers, the Driver app, and the Rider app. (ECF No. 50 at 14.) A review of Quartz's allegations show that this is not the case.

The asserted '004 system claims are now limited to claims 12, 13, and 18. The FAC alleges that Uber's Driver app provides the first element (calendar module) of independent claim 12 and Uber's servers correspond to the other two claim elements. (FAC ¶¶ 60–64.) Dependent claims 13 and 18 recite additional functions performed by the same servers recited in claim 12. (*Id.* ¶¶ 65, 67.) The Rider app does not provide any of the recited functions of those system claims, and thus is also not included in these infringement allegations. Paragraph 76 alleges that Uber makes the systems of claims 12, 13, and 18 when a driver performs the final step of downloading the Driver app. Paragraph 77 alleges that drivers use the system by using the Driver app to go online, thus putting the Uber Platform into action, and that drivers exercise control over the Uber Platform and

---

[3] Whether to treat the asserted method claims as system claims is one that should be decided in the context of claim construction and/or a summary judgment motion, and not at the pleading stage.

obtain beneficial use of each element of the claimed system. Because the Rider app is not part of the system of these claims, there was no need to address the Rider app in these allegations.

With respect to the "use" allegations, Uber objects only that Quartz did not plead that the drivers (the relevant party that Quartz alleges "uses" the systems of these claims) use or put the Rider app into action or service. (ECF No. 50 at 15.) Here again, because these claims are not directed to functions of the Rider app, there was no need to include such allegations. Notably, Uber does not argue that Quartz inadequately pled how the drivers use and control the Driver app, which puts into service the Driver app and Uber servers, effectively conceding that Quartz has met its pleading burden as to the relevant facts and infringement theories.

Uber's objection to Quartz's allegations regarding "making" the systems of claims 12, 13, and 18 is similarly without merit. In Paragraph 76, the FAC alleges that the "making" of the claimed invention is "completed when a ***driver*** performs the final assembly step of downloading the Driver app to the driver's mobile device." This is the relevant and only necessary allegation for who "combine[s] all of the claim elements." Uber's assertion that Quartz does not explain how the driver combines the Rider app with the rest of the system is based on its misinformed view that the Rider app is alleged to supply one element of the claimed system.

Quartz's "making" allegation is sufficient and in line with the relevant case law, which instructs that to "make" a system under § 271(a) , a single entity must "combine all the claim elements." *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1288 (Fed. Cir. 2011)(finding that customer "made" the system since it combined all of the claim elements by providing the claimed "personal computer data processing means" and installing the client software). Here, the FAC alleges that the driver is an Uber employee, and that the driver completes the system (which as claimed includes the Driver app and the Uber servers) by downloading the

Driver app. Again, Uber does not take issue with these allegations, effectively conceding that Quartz has met its pleading burden for these allegations as well.

## V.     Quartz Properly Alleges "Use" And "Making" Of The Asserted '464 System Claims

The only asserted system claim from the '464 patent is claim 20. The FAC alleges that infringement of claim 20 involves the Rider app (a controller located at a location) (FAC ¶ 114) and the mobile device of a driver (a vehicle device) (*id.* ¶ 117). This is one instance of a claimed system that *is* directed in part to the Rider app. Paragraph 126 alleges that Uber drivers are employees and that Uber directs and controls the actions of its riders, such that the riders' actions are attributable to Uber. Quartz further alleges that the rider makes the system of claim 20 when the rider performs the final step of downloading the Rider app. In Paragraph 127, Quartz alleges that the rider uses the system of claim 20 by entering a ride request in the Rider app, putting the Uber Platform into action and triggering the functions of the claimed system components, and exercising control over the Uber Platform for the rider's benefit.

With respect to the "use" allegations, Uber complains that Quartz has not alleged how the rider uses or puts into service the Driver app. (ECF No. 50 at 15.) But Uber ignores that Quartz pleads that the drivers are Uber employees. (FAC ¶ 38.) When a rider puts the system into use by requesting a ride in the Rider app, the system is notified of the passenger's pick-up location, ride preferences, and other vehicle control information used by the Uber Platform to match riders and drivers, and such vehicle control information is then provided to the driver (i.e., Uber) via the Driver app. Thus, when a rider uses the system, it necessarily controls each use and benefits from each component, including the Driver app, which is an extension of Uber. As such, Quartz has plausibly pled a legally cognizable infringement theory based on a rider's use of system claim 20.

With respect to the "making" allegations, Uber complains that under its interpretation of *Centillion*, one party needs to combine all the elements such that Quartz cannot rely on both the driver and rider to "make" the system. (ECF No. 50 at 16–17.) But *Centillion* also recognizes that a party may be vicariously liable for the actions of its customers. 631 F.3d at 1288. The FAC alleges that the drivers are Uber employees. (FAC ¶¶ 38, 126.) The FAC further alleges that the acts of the employee drivers in combination with riders acting under Uber's direction and control are all attributable to Uber such that their acts of making the system constitute infringement by Uber. (*Id.* ¶ 126.) This is a plausible application of the relevant law of "making" a system.

## VI.    Venue Is Proper As To Each Cause Of Action

Uber does not deny that original venue exists under 28 U.S.C. § 1400(b) and is properly alleged as to the causes of action under the '004, '464, '085, and '616 patents. (*See* ECF No. 50 at 5.) As to the '215 and '275 patents, Quartz properly relies upon the doctrine of pendent venue. Importantly, because the other four patent causes of action are properly venued here under the more restrictive provisions of § 1400(b), Quartz is not circumventing the patent venue provisions, nor is it attempting to supplement it with the more general provisions of § 1391(c).

Pendent venue is appropriate where one or more claims arising out of a common nucleus of operative fact do not satisfy the requirements of the applicable venue statute. The '215 and '275 patents involve methods where each step is performed on Uber's servers. Taking Uber at its word that it does not have any rideshare servers in this District,[4] Quartz's FAC alleges that venue is

---

[4] While Uber has represented that servers it uses for rideshare are not in Texas, Uber does not publicly disclose the location of every component of its complex architecture, and Quartz cannot determine whether any other relevant server activity may occur in this District. Quartz is also unaware of any case that requires that each step of a method be performed in the District in order for venue to be proper. Indeed, at least one case, *Seven Networks LLC v. Google LLC*, 315 F. Supp. 3d 933, 943–44 (E.D. Tex. 2018), has found to the contrary. *See also Blackbird Tech LLC v. Cloudflare, Inc.*, 2017 WL 4543783 (D. Del. Oct. 11, 2017). As such, discovery may show that

proper under pendent venue. The claims of infringement relating to the other four patent causes of action involve the same accused technology, and likely the same or greatly overlapping discovery, evidence and witnesses. (FAC ¶¶ 12, 14.) Thus, the claims all arise out of a common nucleus of operative facts. Under such properly alleged facts, pendent venue is entirely appropriate.

Uber argues that the "Supreme Court has held repeatedly that the specific venue requirements specified by Congress in § 1400(b) take priority over other venue statutes and ***doctrines***" but none of the three Supreme Court cases that Uber cites dealt with a venue "doctrine" let alone pendent venue. (ECF No. 50 at 6 (emphasis added).) As Uber acknowledges, the Federal Circuit also has not weighed in on the doctrine of pendent venue. (*Id.*) Thus, there is no binding case of which Quartz is aware that affirmatively prevents this Court from exercising pendent venue over the two related '215 and '275 causes of action.[5]

Indeed, this case is unlike the bulk of cases that declined to apply pendent venue to patent claims. In those cases, a plaintiff tried to rely on a more general venue statute for a "primary" non-patent cause of action to avoid the more specific patent statute for the "secondary" patent cause of action. *See Nissei ASB Co. v. R&D Tool & Eng'g Co.*, 2018 WL 9961069 (N.D. Ga. Nov. 9, 2018); *Glob. Protection Corp. v. Arthur*, No. 1:18-cv-10966, slip op. at 1 (D. Mass. Sept. 20, 2018); *Cal. Expanded Metal Prods. Co. v. Klein*, 2018 WL 2041955 (C.D. Cal. Apr. 30, 2018); *Wet Sounds, Inc. v. PowerBass USA, Inc.*, 2018 WL 1811354 (S.D. Tex. Apr. 17, 2018); *Nat'l Prods., Inc. v. Arkon Res., Inc.*, 2018 WL 1457254 (W.D. Wash. Mar. 23, 2018); *Jenny Yoo Collection, Inc. v. Watters Design Inc.*, 2017 WL 4997838 (S.D.N.Y. Oct. 20, 2017). Here, the "primary" causes of

---

Uber practices one or more steps of the asserted method claims in the District such that venue may additionally be established under § 1400(b) as to these causes of actions as well.

[5] In addition to the post-*TC Heartland* cases discussed herein, Uber points to seven out-of-district cases from the 1930s, 1960s, and 1970s. These, too, are not binding, and in most instances, it is unclear whether the courts were even asked to consider the doctrine of pendent venue.

action are patent infringement and satisfy the patent-specific § 1400(b) venue statute. Nor is Quartz attempting to use pendent venue to bring into court a defendant that is not already here, as was the case in *Olivia Garden, Inc. v. Stance Beauty Labs, LLC*, 2018 WL 3392063 (N.D. Cal. July 12, 2018) and *Shure, Inc. v. ClearOne, Inc.*, 2018 WL 3032851 (N.D. Ill. Mar. 16, 2018).

*Bio-Rad Laboratories, Inc. v. 10X Genomics, Inc.*, 2020 WL 2079422 (D. Mass. Apr. 30, 2020), while not binding, is on point. There, the court rejected the argument that cases like those cited by Uber preclude the exercise of pendent venue. The *Bio-Rad* court observed "[t]he other cases which have refused to allow pendent venue involved plaintiffs who brought non-patent claims and sought to use pendent venue to skirt section 1400's requirements for the patent claims. . . . This is not the case here. ***The primary claims are patent claims and are properly venued, thus this Court can exercise pendent venue over the '115 patent***." *Id.* at *9 (internal citations omitted, emphasis added). *Bio-Rad* agreed with *Omega Patents LLC v. Calamp Corp.*, 2017 WL 4990654 (M.D. Fla. 2017), which applied pendent venue in a case with primary and secondary patent claims.

Uber attempts to distinguish these cases because venue over the primary patent causes of action was established based on a forum selection clause that did not apply to the secondary patent claims. But the operative legal principle of *Bio-Rad* and *Omega Patents* applies beyond that circumstance: a primary patent claim that is "properly venued" makes exercising pendent venue over another related patent claim proper. It should make no difference whether venue over the primary claim was based a forum selection clause or § 1400(b). Moreover, Quartz submits that the justification for applying pendent venue is even stronger here, where original venue exists under § 1400(b) rather than under an agreement of the parties. Uber tries to diminish the applicability of these cases, relying in part on the fact that *Nissei* distinguished *Omega Patents*. (ECF No. 50 at 9).

But the primary cause of action there was a breach of contract claim. It was in this context that the court declined to exercise pendent venue over additional patent claims. 2018 WL 9961069, at *4.

Because Quartz does not seek to avoid the special venue provisions of § 1400(b), this Court should find it proper to exercise pendent venue over the '215 and '275 patent claims.[6]

## VII.   Quartz's Inducement Theories As To Methods Claims

Uber's challenge to Quartz's inducement claims rests in part on the same misreading of the FAC as accusing the Rider app in claims that do not recite steps performed by the Rider app. Uber obfuscates matters by failing to differentiate between method and system claims. (ECF No. 50 at 19 ("Having failed to plausibly allege that the driver directly infringes the ***method/system claims***, the inducement allegations must be dismissed." (emphasis added).) This is improper.

The inducement theories as to method claims were pled in the alternative if the Uber drivers are found to be Uber's agents rather than employees. (*See, e.g.*, FAC ¶ 78.) Uber cites *Limelight Networks, Inc. v. Akami Technologies, Inc.*, 572 U.S. 915 (2014), for the proposition that a party may not prove inducement by showing that the defendant performed some method steps and induced a third party to perform the others. *Limelight* is distinguishable because there the third-party had not been shown to be an agent of the defendant. *Id.* at 919. . Because performance of all claimed steps could therefore not be attributed to a single person, the predicate direct infringement to support induced infringement never occurred. *Id*. at 923. Here, Quartz alleges that the drivers are Uber's agents or are otherwise controlled by Uber even if not employees (FAC ¶ 78) and thus there is a properly pled theory of direct infringement with all steps being attributable to Uber.

However, because the inducement theory is largely redundant of the alleged direct infringement, Quartz is willing to withdraw it as to the method claims to simplify the case. Quartz

---

[6] If the Court declines to exercise pendent venue, Quartz requests that the Court transfer the '275 and '215 causes of action to the District of Delaware, where Uber is incorporated and thus resides.

thus respectfully offers a Second Amended Complaint ("SAC"), attached hereto as Exhibit 1, that removes its inducement allegations as to the method claims of the '004 patent.[7] However, the allegations of inducement of the system claims where the direct infringement is performed by an Uber driver as a single actor should remain. (FAC ¶¶ 78–84.) That theory is not redundant (assuming the drivers are found not to be employees) because the direct infringers are Uber drivers and not Uber.

The proffered SAC removes inducement allegations as to the method claims of the '464 patent for essentially the same reason. However, its allegations of inducement of the system claims where the direct infringement is by a passenger as a single actor remain. (FAC ¶¶ 128–134.) With respect to the '085 patent, the proffered SAC removes inducement allegations as to the method claims (there are no system claims still being asserted from the '085 patent). With respect to the '616 patent, the proffered SAC removes inducement allegations as to all claims. Quartz respectfully requests it be granted leave to file the SAC.

## VIII.  Quartz Properly Pleads Infringement Based On Uber's Development, Testing, And/Or Demonstration

Uber claims that Quartz has not provided any supporting facts for its allegations that Uber infringes by its development, testing, and/or demonstration activities. (ECF No. 50 at 20.) This is not the case. The FAC alleges (as did the original Complaint) that Uber provides in-person support to its drivers at Uber Greenlight Hubs located in the Western District, and that it maintains an office location in Austin that employs around 90 people. (FAC ¶ 6.) The FAC then alleges on information and belief that these Uber employees develop, test, and demonstrate the accused methods or systems in a manner that infringes the asserted patents. (*See, e.g.*, *id.* ¶¶ 71, 76–77, 119, 126–27, 161, 219, 245, 252, 280, 282.) This is sufficient for pleading purposes, as there is a

---

[7] The SAC also removes allegations for claims dropped during Quartz's earlier claim narrowing.

reasonable inference that the Uber employees working at the Greenlight Hubs and in the Austin office practice the asserted claims in connection with their job duties.

Moreover, these allegations are unlike the *De la Vega v. Microsoft Corp.* case. There, the plaintiff's sole infringement allegations were based upon on testing that occurred before the patent even issued, which of course could not form the basis for an infringement claim. Case No. 6:19-cv-612, ECF No. 29 at 8–9 (W.D. Tex. Feb. 11, 2020).

Uber also argues that development "alone" is insufficient for a finding of infringement with respect to method claims. However, Quartz has expressly alleged infringement based upon development, testing, ***and/or*** demonstration. As such, this argument, too, must be rejected. *Cf. Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, 329 F. Supp. 3d 1070, 1101 (N.D. Cal. 2018) (citing *Embrex, Inc. v. Serv. Eng'g Corp.*, 216 F.3d 1343, 1349 (Fed. Cir. 2000)) (noting very limited exceptions for purportedly de minimis infringement such as testing).

## IX. Conclusion

For the foregoing reasons, Quartz respectfully requests that the Court deny Uber's motion.

Dated: October 26, 2020                    Respectfully submitted,

By:  /s/ Nicole L. Little

Timothy P. Maloney (IL 6216483)
tim@fitcheven.com
Nicole L. Little (IL 6297047)
nlittle@fitcheven.com
Joseph F. Marinelli (IL 6270210)
jmarinelli@fitcheven.com
Evan Kline-Wedeen (IL 6329941)
eklinewedeen@fitcheven.com
Jacqueline Thompson (IL 6333461)
jthompson@fitcheven.com
Thomas James (IL 6331587)
tjames@fitcheven.com
FITCH, EVEN, TABIN & FLANNERY LLP
120 South LaSalle Street, Suite 2100
Chicago, Illinois 60603
Telephone: (312) 577-7000
Facsimile: (312) 577-7007

*Attorneys for Plaintiff*
*Quartz Auto Technologies LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document has been caused to be served on

October 26, 2020 to all counsel of record via CM/ECF, which will send notification of such filing

to all registered participants:

/s/ Nicole L. Little
*Attorney for Plaintiff*